## NATIONAL LABOR RELATIONS BOARD v. BEATRICE FOODS CO.

### No. 4017.

United States Court of Appeals
Tenth Circuit.

July 3, 1950.

---

Melvin Pollack, Washington, D. C. (David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Marcel Mallet-Prevost, all of Washington, D. C., on the brief), for petitioner.

Floyd L. Rheam, Tulsa, Okla. (Valjean Biddison, Tulsa, Okla., on the brief), for respondent.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This case is before the court upon petition of the National Labor Relations Board[1] for an enforcement of its order against the respondent, Beatrice Foods Company.[2] The order was issued in a proceeding before the board originating from a charge of Tulsa General Drivers, Warehousemen and Helpers Local Union 523 A.F.L.[3] claiming that the company was engaging in unfair labor practices within the meaning of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq. After extensive hearings, the substance of the board's finding was that the company, during a pre-election campaign for the de-certification of the union, offered benefits for a union defeat and threatened reprisals for a union victory. The board's order directed the company to cease and desist from offering benefits or threatening reprisals, directly or indirectly, in order to discourage its employees from supporting the union, or any other labor organization, or in any like or related manner interfering with, restraining or coercing its employees in the exercise of the right to self-organization, to form labor organizations, to join the union or any other labor organization, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. The order also required the company to post appropriate notices in its plant which in effect notified the employees that the company would comply with the cease and desist order.

The sole question here is whether there is sufficient evidence to support the findings upon which the order is based. The findings, if supported by sufficient evidence on the record as a whole, are conclusive. Title 29 U.S.C.A. § 160(e); N. L. R. B. v. Continental Oil Co., 10 Cir., 179 F.2d 552; N. L. R. B. v. Fairmont Creamery Co, 10 Cir., 169 F.2d 169; N. L. R. B. v. Sifers, 10 Cir., 171 F.2d 63.

1. Hereinafter referred to as board.

2. Hereinafter referred to as company.

3. Hereinafter referred to as Union.

The evidence, tending to support the board's findings, is briefly summarized as follows:

In December of 1947, the company, an Oklahoma corporation, was engaged in the purchase and processing of raw milk and in the sale in interstate commerce of dairy and food products. The union was the exclusive bargaining agent for the employees of the company and a petition for its decertification was filed and an election called for January 7, 1948. A few days after the filing of the petition, Early R. Cass, plant manager, summoned salesman Elder to his office for the purpose of discussing the union. Cass was in full charge of the plant and his actions were imputable to the company. Elder had been an employee for fourteen years and was an active and recognized union leader. In substance Elder was told that the company planned an extensive expansion program which could not be carried out if it continued to be "shackled" by the union and that he would like to get the union out of the plant so that he could operate without outside interference. He praised Elder as a salesman and said he could not understand why he was content to remain as such. He told him there was room for advancement for people who would work with the company and that he hoped that he would see fit to help defeat the union. Elder testified: "He led me to believe that I might go higher if we could get the union out."

The day before the election Cass called six meetings, one of which each employee of the company attended. He spoke for approximately 45 minutes to each of those meetings concerning the forthcoming election. His remarks were prefaced with the assurance that the ballot would be secret and they could vote according to their own desires without fear of reprisal from the management. He criticized unions in general and condemned the union for jeopardizing the welfare of employees and their families by its unreasonable wage demands and asked them to give him a vote of confidence by voting against the union. He stressed the company's ability to do more for the employees if his hands were not "shackled" by the union. He pointed out the economic betterment of the employees if the company's expansion plans could be carried out, stating that these plans were far less likely to materialize if the union won the election. He stated that the only way that a union could exist was to create suspicion on the part of the worker concerning the honesty and integrity of the management. The employees were told that the company had found "that it was unwise to promote a union-minded man from the ranks of the workers"; that there were men in the organization that deserved more money "but because of the contract it wasn't permissible or they couldn't carry it out." Admittedly Cass was extremely desirous of a union defeat in the election.

■ ■ The company contends that its manager had a right in its behalf to speak his thoughts and to express his opinion and that he was protected in what he said by Section 8(c) of the Act, 29 U.S.C.A. § 158 (c), and by the First Amendment to the Constitution of the United States which guarantees free speech. Section 8(c) states that the expression of any view, argument or opinion shall not constitute or be evidence of unfair labor practice if such expressions contain no threat of reprisal or force or promise of benefit. The board held that a reasonable inference to be drawn from what the manager said and did contained threats of reprisal, force and promise of benefit. The credibility of the witnesses and the inferences reasonably to be drawn from the evidence are matters to be determined by the board and not the court. N. L. R. B. v. Standard Oil Co., 10 Cir., 124 F.2d 895, 903; Wilson and Co. v. N. L. R. B., 10 Cir., 156 F.2d 577, 580; N. L. R. B. v. Fairmont Creamery Co., 10 Cir., 169 F.2d 169, supra. The answer to the contention that the statements of the manager were guaranteed by the free speech amendment is found in a statement of this court in N. L. R. B. v. Continental Oil Co., 159 F.2d 326, 330:

"So long as persuasion does not amount to coercion it is within the guaranty, but no one has the constitutional right to interfere with, restrain or coerce another in the exercise of the same right. The use of economic power over men and their jobs

to influence their action is more than the exercise of freedom of speech. Mere suggestions, when made by one who holds the power of economic coercion in a setting conducive to the exercise of that power, may have the unwarranted effect of exerting a coercive influence to which freedom of speech does not extend. N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 598, 61 S.Ct. 358, 85 L.Ed. 368."

■ Considering the record as a whole, we are of the opinion that the evidence supports the board's finding. It follows that the board's order will be enforced.