**NATIONAL LABOR RELATIONS BOARD, Petitioner,**
v.
**HILL & HILL TRUCK LINE, INC., Respondent.**
No. 17518.

United States Court of Appeals
Fifth Circuit.
May 15, 1959.

Frederick U. Reel, Atty., N. L. R. B., Thomas J. McDermott, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Jerome D. Fenton, Gen. Counsel, Standau E. Weinbrecht, Atty., N. L. R. B., Washington, D. C., for petitioner.

John B. Abercrombie, Voris R. Burch, Jr., Houston, Tex., Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for respondent.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This case is brought by the petition of the National Labor Relations Board for enforcement of its order against the respondent. The Board found that respondent, which is engaged in interstate hauling of oil field supplies, violated Section 8(a) (1) and Section 8(a) (3) of the National Labor Relations Act [1] by certain acts committed at respondent's main office and terminal at Houston, Texas, and its pipeyard in Greens Bayou, Texas.

The Board found that respondent violated Section 8(a)(1) by announcing an unlawful no-solicitation rule, threatening employees with loss of benefits in the event of unionization, and interrogating employees to determine union sympathies; and that respondent further violated Section 8(a)(3) and Section 8(a) (1) by the discriminatory layoff of its pipeyard employees and the discriminatory discharge of one employee. We find that there is substantial evidence to support all but one of these findings.

■ All of the allegedly unlawful acts transpired within a few days after two of respondent's truck drivers, R. C. Knipe and Marvin Dennard, began soliciting authorizations from respondent for a union. After several days of soliciting, one of the drivers requested that respondent's president, Harold Ormston, recognize the union as his employees' collective bargaining representative, but the request was refused. The next day Ormston called Knipe and Dennard into his office and told them they could not solicit members while on company property or *while on the company payroll,* that in the future they would have to obey all company rules whether or not they had been enforced in the past, and

that they could no longer expect to obtain advances of money or other assistance from the company when they got in trouble while on trips for the company.

The Board found that Ormston's statements about the employee benefits and the enforcement of the company rules were threats of reprisals for union activity and therefore violated Section 8(a) (1) of the Act. We find that there was substantial evidence to support the Board's finding that these statements were made and that they violated Section 8(a)(1). See, e.g., N.L.R.B. v. Armstrong Tire & Rubber Co., 5 Cir., 228 F.2d 159.

Two days after this conference Ormston permitted a group of supervisory employees and drivers to circulate an anti-union petition among respondent's employees for the purpose of determining the union sympathies of his employees. The petition was typed in Ormston's office on stationery bearing respondent's letterhead. Before Ormston stopped its circulation upon advice of counsel it was signed by respondent's general superintendent, two foremen, respondent's office manager, and a number of other employees.

■■ The Board found that the circulation of this anti-union petition interfered with, restrained and coerced respondent's employees in the exercise of their rights under Section 7, and hence was violative of Section 8(a)(1) of the Act. It is not disputed that this petition was circulated under the circumstances found by the Board. Respondent's only contention regarding the petition is that there is no showing that it actually hampered the union's efforts to organize the employees. But interference need not be successful interference in order to amount to a violation of Section 8(a) (1). Elastic Stop Nut Corporation v. N.L.R.B., 8 Cir., 142 F.2d 371, 377, certiorari denied, 323 U.S. 722, 65 S.Ct. 55, 89 L.Ed. 580; N.L.R.B. v. Brezner Tanning Co., 1 Cir., 141 F.2d 62, 64. The Board's finding that the circulation of

1. 29 U.S.C.A. § 151 et seq.

this petition under these circumstances was a violation of the Act is clearly correct.

■ The circulation of this petition is, in addition to being an independent violation, evidence in support of the Board's finding that the no-solicitation rule announced by Ormston to employees Dennard and Knipe was intended to discriminate against pro-union activities and not to preserve company efficiency and productiveness. It and the other anti-union conduct of respondent provide substantial evidence of the discriminatory character of the no-solicitation rule. They distinguish this case from the situation in N.L.R.B. v. Avondale Mills, 5 Cir., 242 F.2d 669, and other cases relied upon by respondent.

■■ The Board also found that Section 8(a)(1) had been violated by the interrogation of employees regarding their union sympathies by one Hendrix, a foreman in respondent's grease shop, and one Box, a foreman in respondent's pipeyard in Greens Bayou. Respondent's contention that there is no substantial evidence that Hendrix was a supervisor within the meaning of the Act is clearly without merit, as is its contention that the Board did not affirm the finding of the Examiner that Box had made such interrogation. The Board expressly adopted all of his findings and conclusions with the exception of certain items which had nothing to do with Box.

We conclude, however, that there is no substantial evidence upon which the Board could find that the interrogation by either of the two supervisors violated the Act. Section 8(a)(1) does not make all interrogation illegal.[2] It makes it illegal "to interfere with, restrain, or coerce employees in the exercise" of the right to organize. To be illegal, then, interrogation must amount to interfer-

ence, restraint, or coercion.[3] As far as is revealed by this record, neither the words used nor the manner or immediate situation in which they were used by Box and Hendrix took this interrogation out of the category of innocuous inquiry and put it into the category of interference, restraint, or coercion. Even if the respondent's acts which provide evidence of its animus toward the union are taken into consideration in order to evaluate this questioning, there is still a lack of evidence to support the Board's finding on this point. The interrogation of the grease shop employees occurred on May 3, and the questioning of the pipeyard employees transpired on May 4. This was before the circulation of the anti-union petition or any of the other events except Ormston's conference with Knipe and Dennard on May 3. There is nothing in this record to show that the employees who were questioned had received any indication of respondent's anti-union feelings.[4]

It is our conclusion that the Board's finding that this interrogation violated Section 8(a)(1) is totally without support in the record.[5]

■ The Board found that at the close of the work day on which Box interrogated the pipeyard employees concerning their union sympathies, he called them together and told them Ormston had ordered them laid off "until they get that mess straightened out." We find that there is substantial evidence supporting the Board's findings that this incident occurred in the manner in which the Board found it did and also that the layoff was prompted by the unionization "mess" rather than by a lack of work for the men. The Board was therefore obviously correct in finding that this constituted a violation of Section 8(a)(3) of the Act.

2. N.L.R.B. v. McGahey, 5 Cir., 233 F.2d 406, 409; N.L.R.B. v. McCatron, 9 Cir., 216 F.2d 212, 216; 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738; N.L.R.B. v. Protein Blenders, 8 Cir., 215 F.2d 749, 751.

3. See cases cited in note 2, supra.

4. Compare N.L.R.B. v. West Point Mfg. Co., 5 Cir., 245 F.2d 783.

5. Cf. Jacksonville Paper Co. v. N.L.R.B., 5 Cir., 137 F.2d 148, 150, certiorari denied, 320 U.S. 772, 64 S.Ct. 84, 88 L.Ed. 462.

■ Respondent complains that even if this finding is correct, the Board's order, which ordered reinstatement of the pipeyard employees is improper. This is because these employees had no seniority rights nor assurance of continued employment by respondent on other than a day-to-day basis, and yet the Board ordered them restored to their former positions "without prejudice to their seniority or other rights and privileges" and further ordered them made whole for their loss of pay resulting from the discrimination, by payment of a sum equal to that which they would have earned from the date of the discrimination to the date of the offer of reinstatement, less net earnings. If the employees had no "seniority or other rights and privileges" then respondent need only act accordingly, and it will be in compliance with the order. Respondent's other contention, that because of the employee's alleged day-to-day tenure, respondent should not have to reimburse them for more than one day's pay is in essence nothing more than its contention— which the Board has rejected with our approval—that respondent laid off the men because of non-discriminatory reasons. Moreover, as far as the record shows, these men were *regular* employees. They were therefore entitled to reinstatement to the jobs they had when they were illegally laid off. Respondent admits it needed them on the work day next following the lay-off. Whether or not they might have been laid off or discharged at the close of that day for some valid reason was a mere contingency which respondent's illegal action prevented ever being resolved and which is now only a subject for mere speculation. Respondent is in no position to demand that this speculation be concluded in its favor.

■ We come finally to the Board's findings and order regarding R. C. Knipe, who was discharged by respondent's president on the alleged ground that Knipe had threatened other employees to induce them to join the union. The Examiner found that Knipe had not been guilty of this misconduct, that Ormston did not honestly believe he had been, that Ormston discharged him because of his union activities which were protected by the Act, and thereby violated Section 8(a)(3) of the Act. The Board affirmed the Examiner's findings of fact but based its finding that Section 8(a)(3) had been violated on a different ground. It stated that assuming Ormston honestly believed that Knipe was guilty of the misconduct charged, this was immaterial to the question whether the discharge violated Section 8(a)(3). Respondent contends that this finding of law conflicts with the decision of this court in Rubin Bros. Footwear, Inc. v. N.L.R.B., 5 Cir., 203 F.2d 486. Since this finding of law is based upon a fact situation which is only hypothetical inasmuch as the Board affirmed the Examiner's finding that Ormston did not honestly believe the discharged employee was guilty of misconduct, but that Knipe was discharged because of union activity, we do not reach this question of law. It is sufficient to say that these findings of fact are supported by the evidence and that they support the conclusion that Knipe's discharge was a violation of the Act.

Subject to what has been stated above regarding the interrogation of employees, the findings of the Board are free from error. Since the terms of the order do not depend on the findings regarding interrogation the order is Enforced in its entirety.