NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
BROWN–DUNKIN COMPANY, Inc.,
Respondent.
No. 6402.

United States Court of Appeals
Tenth Circuit.
Jan. 19, 1961.

Rosanna A. Blake, Washington, D. C. (Stuart Rothman, Dominick L. Manoli, Marcel Mallet-Prevost and Morton Namrow, Washington, D. C., on brief), for petitioner.

Karl H. Mueller, Fort Worth, Tex. (Harold E. Mueller, Fort Worth, Tex., on brief), for respondent.

Before MURRAH, Chief Judge, and BRATTON and BREITENSTEIN, Circuit Judges.

MURRAH, Chief Judge.

This petition is to enforce an order of the National Labor Relations Board find-

ing the respondent, a large department store in Tulsa, Oklahoma, guilty of unfair labor practices under Sections 8(a) (1), (3) and (5) of the Labor Relations Act. 29 U.S.C.A. § 158 (a) (1), (3) and (5). The respondent is clearly engaged in commerce within the scope of the Act and there is no question of jurisdiction.

The basic facts are that in November 1956, three of the Company's operating engineers joined a union. Following this the Company consulted a labor relations firm and subsequently made an arrangement with an operating-management firm, Anderson-Rooney Company, whereby the latter agreed to take over, on a contract basis, the employment of the engineers and their duties. The respondent Company agreed to pay all costs of labor and materials, as well as a monthly management fee. At the same time, the matter of Anderson-Rooney taking over the janitorial services performed by respondent's maids and porters was also discussed.

Subsequently when the Company learned that the Teamsters Union was conducting a campaign to organize its employees, it again consulted the labor relations firm. The organizational campaign resulted in the NLRB ordering an election among the Company's maids, porters and elevator operators. And these latter employees comprise the employee-unit with which we are concerned.

During the three-week period between the issuance of the election order and the actual voting, the Company carried out an intensive program to convince the employees that they should reject the Union. Various employees testified that the store supervisors told them they were trying to "straighten out the mess the store was in," and that "management never had dealt with the Union and wouldn't have nothing to do with it." They were also promised pay raises and other benefits if the Union was rejected. Despite these Company activities, the Union was successful and was duly certified as the bargaining representative for the unit.

In response to the Board's 8(a) (1) charge and findings, the Company takes the position that these pre-election and pre-certification activities, though persuasive, were not intended to restrain or coerce employees in the exercise of their collective bargaining rights; and that the supporting evidence is "too insubstantial to establish a transgression of the limits of permissible free speech."

The Company was, indeed, constitutionally and statutorily free to attempt to persuade its employees not to join the Union, provided, of course, such efforts contained "no threat of reprisal or force or promise of benefit." See Section 8(c) of the Act. 29 U.S.C.A. § 158(c). And the fact that the Company's efforts were unavailing is, to be sure, susceptible of an inference of a permissible expression of "views, argument or opinion." Id. But, the fact that the Company's efforts were unsuccessful does not necessarily lead to the conclusion that they were not restrictive or coercive. N. L. R. B. v. Hill & Hill Truck Line, 5 Cir., 266 F.2d 883. See also N. L. R. B. v. Beatrice Foods Co., 10 Cir., 183 F.2d 726; N. L. R. B. v. Fairmont Creamery Co., 10 Cir., 169 F.2d 169. In the last analysis, the function of drawing the rather nebulous line between permissible persuasion and prohibited coercive conduct lies within the special competence of the Board which, as we know, is primarily responsible for the effectuation of the purposes of the Act. It is sufficient to say that the record evidence is susceptible of an inference of coercive interference, and we are therefore unable to say that the Board's conclusions in this respect are unwarranted in fact and law. See N. L. R. B. v. Central Oklahoma Milk Producers Association, 10 Cir., 285 F.2d 495.

Shortly after certification, the Union learned that the Company was considering subcontracting the work of these unit employees to Anderson-Rooney. A meeting of the employees was thereupon called, and they voted unanimously to reject employment with Anderson-Roon-

ey, though it would have meant substantial increases in their wages. The reasons for the rejection are not manifest and are apparently immaterial. In any event, despite objections of the employees and the Union, the Company signed a contract with Anderson-Rooney, whereby the latter would assume the work of the unit employees on a cost-plus-fixed-fee basis.

On the day following the signing of the contract, and without notice to the Union, Anderson-Rooney presented the employees printed forms for the purpose of transferring their employment from respondent-company to the management firm. After consulting the Union, the employees signed the forms under protest, apparently because failure to sign would have resulted in immediate discharge. Upon these facts the Board concluded that respondent violated Section 8(a) (3) of the Act by discriminatorily discharging the employees as a reprisal for their Union activities. It also held the Company in violation of Section 8(a) (5) for failing and refusing to afford the Union the opportunity to bargain concerning the terms and conditions of the new employment. The Board accordingly ordered reinstatement of the employees with Brown-Dunkin, provided however, that they could elect to remain with Anderson-Rooney, in view of the latter's higher wages.

 The respondent makes the argument that the order is unconventional and prejudicial in that "this is one of the rare cases in which the Board has ordered an employer to engage in a discontinued business operation." It does not appear to us, however, that such is the true consequence of the Board's order. In the first place, the respondent has not abandoned the services of the unit—the employees continue to discharge the same services. But the Company was free to subcontract the employees' work, thereby severing the employer-employee relationship, so long as the subcontracting was not made a subterfuge or an easy device for evading the statutory obligations to bargain in good faith. The crucial and decisive fact is whether, as the Board found, the work of the employees was subcontracted to another in order to evade the collective bargaining process. The Company may not discontinue a part of an integrated operation merely because the employees engaged in the particular unit seek Union representation.[1] In circumstances like these, motivation becomes important, indeed decisive and, again, permissible inferences from the established facts are crucial. And, as we know, the inference-drawing power is with the Board and our function is to determine if there is any rational basis for attributing a prohibited motive to the transaction.

The respondent maintains that the employees were discharged for legitimate reasons. It contends that Anderson-Rooney was contracted because it could perform the same work more economically. It may be assumed that economy is a legitimate reason for good faith subcontracting. But even so, the Board justifiably concluded that the Anderson-Rooney contract did in fact increase the cost of this part of the respondent's operations, due to the substantial wage increase as well as the management fee.

1. See Williams Motor Co. v. N. L. R. B., 8 Cir., 128 F.2d 960, 964; N. L. R. B. v. Bank of America, 9 Cir., 130 F.2d 624, 629, certiorari denied, 318 U.S. 791, 63 S.Ct. 992, 87 L.Ed. 1157; Butler Bros. v. N. L. R. B., 7 Cir., 134 F.2d 981, 985, certiorari denied, 320 U.S. 789, 64 S.Ct. 203, 88 L.Ed. 475; N. L. R. B. v. Cape County Milling Co., 8 Cir., 140 F. 2d 543, 546; N. L. R. B. v. Missouri Transit Co., 8 Cir., 250 F.2d 261, 262. Cf. N. L. R. B. v. R. C. Mahon Co., 6 Cir., 269 F.2d 44, 47 and N. L. R. B. v. Houston Chronicle Publishing Co., 5 Cir., 211 F.2d 848, 851, where the discontinuance of a part of the business was not prompted by an intention to avoid the Act, but resulted from legitimate business motives. And Cf. United Steelworkers of America v. New Park Mining Co., 10 Cir., 273 F.2d 352, wherein the question under Section 301 of the Act was whether subcontracting was a prohibited device for evading the obligations of a consummated collective bargaining contract.

The Company also asserts that plans to subcontract to Anderson-Rooney were formulated long before the Union election and therefore cannot be considered violative of the Act. But, the Board held "On this record there can be no question that the successful unionization of these employees precipitated the broadening of the Anderson-Rooney contract, which already covered operating engineers, to include cleaning and elevator personnel, and the discharge by respondent of all employees in the certified unit." This finding is supported by substantial evidence to the effect that even though the contract relating to the operating engineers was in existence prior to the labor difficulties, the successful Union election prompted the discharge of these unit employees in violation of the Act. And discharge for Union activities is the very substance of discriminatory practices prohibited by Section 8(a) (3) of the Act. We conclude that the Board's findings in this regard are factually and legally justified.

■ The contention is also made that the respondent did not deny the Union the right to bargain concerning the terms and conditions of employment in violation of Section 8(a) (5). The unassailed facts are, however, to the contrary. While the Union appears to have had some intimation of the impending Anderson-Rooney contract, it was not until the morning of the effective date of the contract that the Union learned it had been consummated. And this information was obtained through the employees, not the employer. Under no stretch of the imagination can it be said that these circumstances gave the Union a fair opportunity to bargain with respondent about not subcontracting the work, or with Anderson-Rooney concerning the conditions of the new employment. This is not to say that the Union must first approve before an employer may contract out work, but it is to say that reasonable notice and a chance to bargain must be afforded before an employer enters into a contract affecting the hire or tenure of its Union workers' employment. This is so because "Such unilateral action minimizes the influence of organized bargaining. It interferes with the right of self-organization by emphasizing to the employees that there is no necessity for a collective bargaining agent." May Dept. Stores v. N. L. R .B., 326 U.S. 376, 385, 66 S.Ct. 203, 209, 90 L.Ed. 145. See also N. L. R. B. v. Crompton-Highland Mills, 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320; N. L. R. B. v. Burton-Dixie Corp., 10 Cir., 210 F.2d 199.

■ The Company's final two contentions are basically matters of procedure. It asserts (1) that the Board's complaint is insufficient because it names some, but not all, of the unit employees and therefore the order cannot issue in favor of the unnamed employees; and (2) that the order is ambiguous and unclear. The essence of the first argument is that in its complaint, the Board named only those employees who had voted in favor of Union representation and omitted those who were in favor of rejecting it. The omission, however, is immaterial because in pertinent parts of the complaint it is specified that all of the employees in the unit were discharged by respondent in violation of the Act. It would be an incongruity and a technical nicety to hold, at this late date, that a part of the unit employees were not included in the complaint when the pleading clearly described the unit and stated that all of the employees therein were treated unfairly. See N. L. R. B. v. Somerset Classics, 2 Cir., 193 F.2d 613.

■ The second contention is based upon provisions in the Board's order granting the employees the option to remain with Anderson-Rooney, or be reinstated by Brown-Dunkin. In effect, the choice is between higher wages paid by Anderson-Rooney and purportedly greater job security provided by Brown-Dunkin. But we find nothing inconsistent or arbitrary in the flexibility of the Board's order. Its form and scope is a matter for the Board to mold to the par-

ticular facts and circumstances in each case. It is not for us to interfere with this discretionary function in the absence of a showing of clear abuse.

The order will be enforced.