**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KING RADIO CORPORATION, Inc., Respondent.**

**No. 119-68.**

United States Court of Appeals Tenth Circuit.

Sept. 17, 1969.

Rehearing Denied Nov. 17, 1969.

Paul J. Spielberg, Attorney, N.L.R.B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel and Peter Kinzler, Attorney, N.L.R.B., Washington, D. C., on the brief), for petitioner.

William G. Haynes, Topeka, Kan., (Lillard, Eidson, Lewis & Porter, Topeka, Kan., on the brief) for respondent.

Before MURRAH, Chief Judge, TUTTLE * and BREITENSTEIN, Circuit Judges.

MURRAH, Chief Judge.

This is a proceeding to enforce a Decision and Order of the National Labor Relations Board finding respondent guilty of violating Section 8(a) (1) by: its no talking and warning notice rule; threatening its striking employees with discharge, permanent replacement and loss of economic benefits; and violating Section 8(a) (5) and (1) by: unilateral wage changes; unilaterally contracting out bargaining unit work; and failing to bargain in good faith.

* Of the Fifth Circuit, sitting by designation.

Affirmatively, respondent was ordered to: (1) Abrogate the wage changes; (2) Bargain in good faith; (3) Upon request, reinstate all striking employees to available positions without prejudice to their wage rates, seniority and other rights and privileges. And if enough positions are not available, place all striking employees on a preferential hiring list.

When this case was here in 398 F.2d 14, to enforce an order of the Board, we sustained the Board's finding to the effect that the no talking and warning notice rule was a discriminatorily inspired violation of Section 8(a) (1) and (5). The no talking and warning notice rule involved here is but a continuation of the rule formerly condemned both by the Board and this court. We again sustain the Finding and Order of the Board based upon the condemned practice.

This brings us to the unilateral wage changes in the bargaining unit found to be a Section 8(a) (5) and (1) violation. Respondent suggests that a part of the wage change was required by the federally established minimum wage and prompted a good faith wage increase for all bargaining unit employees.

This argument seems plausible on its face. But the Board thought, not without justification, that the wage changes instituted as they were during negotiations on that very subject, were suspect of an 8(a) (5) violation. And when considered with the fact that the wage increases were inequitably distributed among the employees in the bargaining unit without regard to merit, a clear violation was shown.

Unilateral changes in wages and working conditions during negotiations concerning the same subject matter are clear manifestations of a lack of good faith bargaining and violate Section 8(a) (5). And this is so, even though the employer may have desired to reach an overall agreement. N.L.R.B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230; N.L.R.B. v. United Nuclear Corporation, 381 F.2d 972 (10th Cir.). Unilateral action in matters of this kind can be justified only after the parties have bargained in fact to an impasse. N.L.R.B. v. United Nuclear Corporation, supra.

The most then that can be said for respondent's position is that the unilateral wage changes were instituted after the point of impasse had been reached. Respondent insists that they were so instituted. The Board found to the contrary. And we quite agree. The wage changes were instituted during purported negotiations concerning that very subject. And if respondent was not bargaining in fact, it was not bargaining in good faith. And the violation is clearly manifest.

The Board found that respondent contracted bargaining unit work to a third party from April to June, 1967, without notice to or bargaining with the union concerning the work in violation of Section 8(a) (5) and (1). The Order is apparently based on the hypothesis that unilateral contracting out of any work is an 8(a) (5) violation. We cannot accept the hypothesis.

It is established that the replacement of employees in the existing bargaining unit with those of an independent contractor to do the same work under similar conditions is a mandatory subject of collective bargaining under Section 8(d). Fibreboard Paper Products Corp. v. N.L.R.B., 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233. Before Fibreboard but consistently with its rationale, we sustained a Board order based upon a finding that the subcontracting work did effect a displacement of the employees of the bargaining unit in violation of 8(a) (5). N.L.R.B. v. Brown-Dunkin, 287 F.2d 17 (10th Cir.). But we recognized that not every unilateral contracting out is an unfair labor practice per se. And subsequent cases have prudently balanced the essential managerial prerogatives against the collective bargaining rights of employees by requiring a showing that the unilateral contracting out of work in some way adversely affected the hire and tenure of the bargaining

unit employees. District 50, United Mine Workers of America, Local 13942 v. N.L.R.B., 358 F.2d 234 (4th Cir.); Puerto Rico Telephone Company v. N.L.R.B., 359 F.2d 983 (1st Cir.).

■ Applying this test, we fail to see how the contracting out of the work in our case in any manner adversely affected the hire and tenure rights of the employees. In the first place, the contracting out involved only a small amount of labor (124 work hours) and occurred while the employees were on strike. The contracting out was of a temporary nature and in no way changed repondent's employment structure. Indeed, the Board did not find that the contracting out adversely affected the hire and tenure of the bargaining unit employees. Absent a showing of significant adverse impact on the bargaining unit, we must decline to enforce the Order of the Board in this respect.

In this connection, the Board also found that respondent violated Section 8 (a) (5) and (1) by failing to inform the union of its intention to contract out the work in question. This would be so if the contracting out did in fact adversely affect the hire and tenure of bargaining unit employees. But since, in our view, it did not, the employer did not violate the Act by failing to inform. Respondent proceeded at its peril but committed no offense. Cf. N.L.R.B. v. Brown-Dunkin, supra.

The Board found that the strike was an unfair labor practice strike from its inception and has been prolonged by the unfair labor practices of respondent. And we sustain that finding as supported by the evidence.

One of General Counsel's exhibits was the notice for a strike vote meeting. The notice referred to dismissal of employees for union activity, arbitrary establishment of the no talking rule, failure to bargain in good faith and the unilateral wage increase. Union Negotiator Lovett testified that he used the handbill during his speech at the strike vote meeting. Local President Jamison testified

employees stated at the meeting they could not continue to work because of the harassment at the plants. Another exhibit was the strike notice. It stated the strike was the result of numerous unfair labor practices of respondent and referred to the rule of the "Iron Fist and Closed Mouth" prevailing at the plants.

■ The strike commenced after the unfair labor practices which the Board found. And which we have sustained. It is sufficiently plain that the strike was actuated by these practices. It follows that the strike was itself an unfair labor practice strike.

The Board found respondent violated Section 8(a) (1) by sending to the striking employees a letter threatening them with loss of employment and benefits unless they returned to work by a designated date. Respondent denied the letter was an unfair labor practice because the strike was economic in nature. This contention has been disposed of by our characterization of the strike.

Respondent then asserts the letter is not prohibited by Section 8(a) (1) since the communication only said the company was considering replacing the strikers. The challenged paragraph reads as follows:

"During the strike the Company plans to remain open and to hire replacements as needed. Serious consideration will be given to replacing any employee who has not reported to work by the normal starting time Monday, April 3rd. Once a striking employee is permanently replaced he or she will no longer be considered an employee of the company."

We start with the proposition that the employer was entitled to express his views if the expression contained no threat of reprisal or force or promise of benefit. 29 U.S.C. Section 158(c). If the coercive nature of the statement is clear from the language itself, then no inquiry into the circumstances under which the statement was made is required. As Judge Hill has said so well for us: "Although on occasion the co-

erciveness of a statement is patently obvious, generally the test of coerciveness is one of total impact to be determined in light of the background in which the statement is made." N.L.R.B. v. Automotive Controls Corporation, 406 F.2d 221 (10th Cir.). It is thus distinctly relevant that the letter was written in a context of other unfair labor practices. Serv-Air, Inc. v. N.L.R.B., 395 F.2d 557 (10th Cir.). Cert. denied 393 U.S. 840, 89 S.Ct. 121, 21 L.Ed.2d 112.

Applying these principles, we agree with the Board that the letter constituted a threat and was an unfair labor practice. The letter was sent in the context of events that included continued enforcement of the condemned no talking rule, unilateral wage changes and a failure to bargain in good faith. The Board properly concluded that respondent traversed the line between permissible persuasion and forbidden coercion.

Respondent asserts that a portion of the remedy ordered by the Board is punitive rather than remedial in nature. As we have seen, the attacked portion of the Order required respondent to abrogate the unilateral wage changes with the exception of the newly adopted minimum rates. Reinstatment of the wage rate progression system existing immediately prior to the unilateral changes was also ordered.

■ The primary responsibility for the formulation of a remedy rests with the Board, and this court will not strike down a proposed remedy, unless it can be said to be oppressive and not designed to effectuate the policies of the Act. N.L.R.B. v. General Drivers, Chauffeurs, Helpers, Etc., 264 F.2d 21 (10th Cir.). It is the function of the Board, not the judiciary, to determine how the effect of an unfair labor practice may be expunged. Furr's Inc. v. N.L.R.B., 381 F.2d 562 (10th Cir.). Cert. denied 389 U.S. 840, 88 S.Ct. 70, 19 L.Ed.2d 105.

■ We cannot say that the Board's remedy is oppressive or not appropriately designed in view of respondent's failure to bargain in good faith before unilaterally introducing a wage change held to be an unfair labor practice. And that the Board ordered remedy is not reasonably designed to effectuate the statutory policy of good faith collective bargaining.

With. exceptions noted, the Board's Order will be enforced.