**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KING RADIO CORPORATION, Respondent,**

**Communications Workers of America, AFL–CIO, Intervenor.**

No. 74–1421.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 24, 1975.

Decided Feb. 12, 1975.

Rehearing Denied March 24, 1975.

---

Alan D. Longman, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and William H. DuRoss, III, Atty., N. L. R. B., on the brief) for petitioner.

William G. Haynes, Topeka, Kan. (Eidson, Lewis, Porter & Haynes, Topeka, Kan., on the brief) for respondent.

Blake, Uhlig & Funk, Kansas City, Kan., and Kane & Koons, Washington, D. C., of Counsel, filed a brief for intervenor.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

For the third time in six years the National Labor Relations Board asks us to enforce an award against King Radio Corporation requiring it to bargain with the Union. No contract has been made. Employer withdrew its recognition of Union and refused to bargain. Board sustained an unfair labor practice charge filed by Union and ordered Employer to bargain. We enforce the award.

Union was certified as exclusive bargaining representative of an appropriate unit of employees in August, 1966. In King Radio Corporation v. National Labor Relations Board, 10 Cir., 398 F.2d 14, we enforced a Board award holding Employer guilty of various unfair practices and requiring it to bargain with Union. Over a year later, in 1969, the controversy was back with us. In National Labor Relations Board v. King Radio Corporation, 10 Cir., 416 F.2d 569, cert. denied 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420, we enforced those portions of an award requiring back pay and bargaining.

After denial of certiorari in the last case, the General Counsel and Employer

filed a joint motion for clarification of the award. On October 7, 1971, Board made a clarifying order having to do with back wages, not duty to bargain. See 193 NLRB 614.

In the 40-month period from October 9, 1968, to February 18, 1972, Employer and Union met for collective bargaining on 21 occasions. At the last mentioned session two items, wages and checkoff, prevented total agreement. Union offered for the first time to pay Employer two or three cents a card for processing dues checkoff. Employer rejected the offer. At the February 18 meeting Employer did not express a doubt as to Union's majority status.

With regard to the February 18 meeting Board said that "at no time in the history of this bargaining relationship have the parties been so close to reaching an agreement." During the next three months Union representative tried several times to reach Employer representative on the phone and his calls were not returned. In the period May 22 to July 27 Union representative wrote three letters to Employer representative requesting resumption of bargaining negotiations. There was no response. On August 3, Union filed an unfair labor practice charge against Employer. Eight days later Employer wrote Union that it had no obligation to continue a "fruitless marathon of bargaining," and questioned, for the first time, the majority status of Union on the basis of increase in unit size and employee turnover.

At the time of the 1966 election, 343 employees in the unit were eligible to vote. The result was 182 for Union and 114 against. On August 9, 1972, Employer had 876 employees within the unit. In the period 1967–1972 Employer hired 4,214 workers and terminated 3,423. Twenty-two of those employed on the date of the election remained employed in August, 1972.

The Administrative Law Judge found that when Employer withdrew recognition it had sufficient grounds for belief that a majority of the unit employees no longer wanted Union representation. Board disagreed saying (1) Employer did not present objective facts showing good faith doubt of majority status; (2) the claim of doubt as to majority status was an afterthought in response to Union's unfair practice charge; and (3) Employer's action was another effort to avoid an agreement with Union. Board went on to hold, 208 NLRB No. 82:

"This is clear from the fact that during the critical negotiating sessions involved herein and following them up until August 11, 1972, the Respondent had never made a claim to the Union that it doubted its majority status even though the factors upon which it relied to establish the alleged doubt in this case were well known to the Respondent during all critical times herein."

More than a year passed after Union certification without a contract. Thereafter, the presumption of representative status is rebuttable and an employer may refuse to bargain if he has a good faith, reasonable doubt of Union majority status. National Labor Relations Board v. Frick Company, 3 Cir., 423 F.2d 1327, 1330–1331. Proof of an employer's frame of mind is not enough. He must show a rational basis in fact for doubt of majority status. National Labor Relations Board v. Rish Equipment Company, 4 Cir., 407 F.2d 1098, 1101. Employee turnover alone does not provide a reasonable basis for concluding that a Union has lost majority status. National Labor Relations Board v. Little Rock Downtowner, Inc., 8 Cir., 414 F.2d 1084, 1091.

Employer emphasizes disagreement among Board members as to the application of the law when an employer withdraws recognition. Differences of opinion have arisen over the burden placed on the General Counsel in such a situation and other related matters. We decline to be concerned with such problems and we make no attempt to reconcile Board decisions. In Brooks v. National Labor Relations Board, 348 U.S. 96, 104, 75 S.Ct. 176, 182, 99 L.Ed. 125, the

Court, in discussing an employer's refusal to bargain when he doubts a Union's continuing majority, said: "This, too, is a matter appropriately determined by the Board's administrative authority."

 Employer urges that bargaining had reached an impasse. Board found no merit in this contention. We rejected the claim of impasse when the controversy was here the second time, 416 F.2d at 571. We agree with Board that the February 18 meeting showed agreement on many issues and progress on those then in disagreement. Determination of an impasse is a fact question peculiarly within Board expertise. National Labor Relations Board v. J. H. Bonck Company, 5 Cir., 424 F.2d 634, 638. The record before us sustains Board's action.

We reject Board's argument that Employer cannot question majority status because it has not paid the back pay award. More than three years has gone by since Board clarified that award. At argument Board attorneys said that the award had not yet been computed and paid. In 1972 a Board attorney estimated that "back pay would be around $25,-000." Employer offered to pay that amount and the offer was declined. The failure of Board to compute the award is inexcusable. Board cannot now take advantage of a situation of its own making.

The record shows no indication of employee opposition to Union. Employer's reliance on increase in unit size and personnel turnover does not impress us. Claim of loss of majority status was not made until after Union filed an unfair practice charge based on failure to negotiate. Board was justified in finding that Employer was not bargaining in good faith.

Neither Employer, Union, nor Board can be proud of the manner in which this controversy has been handled. In 1968 we ordered enforcement of an order to bargain. In 1969 we ordered enforcement of an order requiring back pay and bargaining. It is now 1975. The parties have neither agreed nor reached an impasse, and the back pay has not been computed by Board. A prompt conclusion of the dispute is desirable.

The award is enforced. The mandate shall issue forthwith.