605 F.2d 1164
 103 L.R.R.M. (BNA) 3126, 87 Lab.Cas. P 11,618
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
Retail Clerks Union, Local No. 73, affiliated with Retail
Clerks International Union, AFL-CIO, CLC, Intervenor,
v.
ROGER'S I.G.A., INC., Respondent.
 No. 77-2060.
 United States Court of Appeals,
Tenth Circuit.
 Argued July 16, 1979.
Decided Sept. 12, 1979.
 
 Linda J. Dreeben, Washington, D. C. (John H. Ferguson, Atty., N.L.R.B., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., with her on the brief), for petitioner.
 Stephen L. Andrew, Tulsa, Okl. (Carl D. Hall, Jr., Hall, Sublett, McCormick & Andrew, Tulsa, Okl., with him on the briefs), for respondent.
 Before HOLLOWAY, BREITENSTEIN and DOYLE, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The National Labor Relations Board, NLRB, petitions for the enforcement of its award requiring the employer, Roger's I.G.A., Inc., to bargain with the Retail Clerks Union. The NLRB decision is reported at 232 NLRB 1053. We enforce the award.
 
 
 2
 Respondent Roger's operates a retail grocery store in Henryetta, Oklahoma, with 13 employees. Since the mid 1930's, the Merchants of Henryetta, Oklahoma, a multi-employer bargaining association, has bargained with the Retail Clerks Union. Roger's became a member of the association sometime after 1935. In 1967 Roger and Hazel Wilson acquired ownership of Roger's and continued the practice of their predecessor in bargaining with the union through the association. The most recent bargaining agreement was effective December 10, 1972, to January 4, 1976.
 
 
 3
 On October 20, 1975, the Union notified Roger's that it desired to withdraw from the bargaining relationship with the Association. On October 27, 1975, Roger's told the Union that it was also withdrawing from the Association. The withdrawal of each was timely.
 
 
 4
 Union requested Roger's to bargain on a single employer basis and sought certain information. Roger's declined to bargain and on October 29 filed a representation petition with NLRB asserting a good faith doubt in the Union's continuing majority status and requesting that an election be held. Union then filed an unfair practice charge against Roger's for violations of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), coercive interrogation, and of § 8(a)(5), refusal to bargain. In the light of the unfair labor practice charge, Roger's election petition was dismissed.
 
 
 5
 After an evidentiary hearing, the Administrative Law Judge, ALJ, dismissed the § 8(a)(1) charge of coercion because it was not sustained by sufficient credible testimony. He held that Roger's had violated §§ 8(a)(5) and (1) by failing to bargain with the Union. The Board upheld his action. In this enforcement proceeding we are concerned only with the charge of failure to bargain.
 
 
 6
 The Board held that the presumption of Union majority status survived Roger's withdrawal from the multi-employer association. Roger's contends that it has no obligation to bargain with the Union on a single employer basis until the Union demonstrates that it has the support of a majority of the employees of Roger's.
 
 
 7
 No election has ever been held for the choice of a bargaining representative by the employees in either the Roger's unit or the multi-employer unit. The Board has not certified the Union as the bargaining representative of the employees in either unit.
 
 
 8
 For a number of years Roger's has accepted, and been bound by, the bargaining agreements made by the multi-employer association and the Union. An employer's voluntary recognition of a Union as the collective bargaining representative of a unit of its employees creates a presumption that a majority of those employees desire representation by the Union. See NLRB v. Cayuga Crushed Stone, Inc., 2 Cir., 474 F.2d 1380, 1383; NLRB v. Newspapers, Inc., 5 Cir., 515 F.2d 334, 340, and cases there cited. The reason is that an employer's recognition of a bargaining representative of less than a majority is an unfair labor practice. See NLRB v. Iron Workers, 434 U.S. 335, 344, 98 S.Ct. 651, 54 L.Ed.2d 586. It is presumed that "employers normally will not knowingly violate the law." NLRB v. Tahoe Nugget, Inc., 9 Cir., 584 F.2d 293, 303.
 
 
 9
 Roger's recognition of majority status is implicit in its participation with the multi-employer group's bargaining with the Union. Id. The Board presumes that union majority status continues after withdrawal from the multi-employer group. A presumption endorsed by the Board must be upheld unless it fails evenhandedly to further the purposes of the statutes which the Board administers. Id. at 297; see also Medo Corp. v. Labor Board, 321 U.S. 678, 681, n. 1, 64 S.Ct. 830, 88 L.Ed. 1007.
 
 
 10
 Tahoe Nugget, supra, enforced a Board's order that a single employer must continue to bargain with a union after that employer had withdrawn from a multi-employer group which had bargained with the Union during the employer's membership in the group. Board member Walther dissented from the Board's order saying, 227 NLRB at 359, that the Board's action "instead of promoting bargaining stability, works to the detriment of employee free choice."
 
 
 11
 The employees choose their bargaining representative. In Tahoe Nugget the court recognized that employee free choice must be balanced against bargaining stability. 584 F.2d at 302; see also Zim's Foodliner, Inc. v. NLRB, 7 Cir., 495 F.2d 1131, 1140, cert. den. 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65. The balancing is primarily the responsibility of the Board subject to judicial review. See NLRB v. Iron Workers, 434 U.S. 335, at 350, 98 S.Ct. 651, 54 L.Ed.2d 586. The Board determined that "freedom of choice must subserve the goal of industrial peace." Tahoe Nugget, 584 F.2d at 302. We agree. The NLRB action preserves the status quo and supports multiple bargaining by discouraging withdrawal by an employer from a multiple group with intent to negate majority status. Id. at 304. This conclusion does not disparage the employees' right of free choice. They may demand a decertification election. In the case at bar they did not do so. Instead the employer petitioned for a representation election. We are convinced that on the facts of the present case NLRB properly applied the presumption of continued majority status.
 
 
 12
 The presumption is rebutted, and an employer may refuse to bargain, if it has a good faith, reasonable doubt of majority status. Burns International Security Services, Inc. v. NLRB, 10 Cir., 567 F.2d 945, 949. "Proof of an employer's frame of mind is not enough. He must show a rational basis in fact for doubt of majority status." NLRB v. King Radio Corp., 10 Cir., 510 F.2d 1154, 1156, cert. den. 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58.
 
 
 13
 Roger's contends that it had a good faith, objective belief that Union did not have majority status. The ALJ found that only four of Roger's 13 employees, Wright, Stephens, Taylor, and Barry, clearly indicated a desire for nonrepresentation by Union. Four others, Meadows, Ingram, Mae Musgrove, and Ed Musgrove, expressed only a desire not to pay dues or join the Union. That desire is not the equivalent of a repudiation of union representation because employees may desire union representation without the assumption of the financial and other obligations of union membership. Terrell Machine Company v. NLRB, 4 Cir., 427 F.2d 1088, 1090; see also Retired Persons Pharmacy v. NLRB, 2 Cir., 519 F.2d 486, 490. The Board held that union repudiation by four out of 13 employees did not suffice to sustain a good faith belief by Roger's that the Union did not have majority status. The Board determination was not arbitrary or capricious and is binding on us. Burns International Security Services, Inc. v. NLRB, 10 Cir., 567 F.2d 945, 948.
 
 
 14
 The procedures followed by the Board in the instant case give us some concern. Roger's claimed a good faith belief that the Union did not have majority status, declined to bargain, and petitioned for an election. The Union countered with the unfair labor practice charge of failure to bargain. The Board then dismissed the election petition. Roger's had a Hobson's choice. If the Union did not represent a majority, the bargaining would be ineffective. Failure to bargain could, and did, result in an unfair labor practice charge and the dismissal of the election petition. The Board has said that the better practice is for the employer to continue to bargain. See Zim's Foodliner, Inc. v. NLRB, 7 Cir., 495 F.2d 1131, 1139, cert. den. 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65. Choice of procedure is for the Board. In the present case it made no difference whether majority status was determined on the employer's election petition or on the Union's failure to bargain charge. In either case the employer, to sustain its petition or its defense, must show a good faith belief, sustained by objective facts, that majority status did not survive the withdrawal from the multi-employer union. The employer failed to make the required showing and is required to bargain. The Board's procedure, unsatisfactory as it may be, provides no basis for relief of Roger's from the order to bargain.
 
 
 15
 Award enforced.