**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CHAMPA LINEN SERVICE COMPANY, Respondent.**

**No. 7338.**

United States Court of Appeals
Tenth Circuit.

Oct. 31, 1963.

Elliott Moore, Washington, D. C. (Arnold Ordman, Dominick L. Manoli, Marcel Mallet-Prevost and Seymour Strongin, Washington, D. C., on the brief), for petitioner.

John K. Pickens, Washington, D. C. (Dawson, Griffin, Pickens & Riddell, Washington, D. C., of counsel, on the brief), for respondent.

Before LEWIS, HILL and SETH, Circuit Judges.

LEWIS, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order requiring respondent to cease and desist from specified activities found by the Board to have constituted a violation of the employees' right to self organization protected under Sec. 8(a) (1) of the National Labor Relations Act, as amended. The order includes the requirement of posting the customary notices and is premised upon a conclusion made by the trial examiner and adopted by the Board that respondent had engaged in the unlawful surveillance of and had interfered with the distribution of union literature during an organizational effort conducted by the complaining unions. Respondent resists enforcement upon claim that the record as a whole does not support the Board's action and that specific error is apparent in the trial examiner's finding of management responsibility for the conduct of two young sons of the general manager, in a limitation imposed upon counsel's right of cross examination, and, finally, in the Board's adoption of the trial examiner's report without giving proper consideration to the exceptions filed by respondent. There is no jurisdictional question.

On June 20, 1962, a joint effort was begun by representatives of Local 304, Dry Cleaning and Laundry Workers Union, and Local 905, Laundry, Linen and Dry Cleaning Drivers (Teamsters), to organize both the inside and outside employees at respondent's plant in Denver, Colorado. On that date, and on six subsequent days, union organizers distributed handbills to the employees at points on the public sidewalk in the vicinity of the plant entrances. A series of incidents occurred on these occasions which forms the basis of the Board's finding of a violation of Sec. 8(a) (1).

Witnesses for the Board testified that during the periods of handbilling management locked the front door of the plant, closed the garage doors, and physically blocked a door designated as the "employees' entrance." Such testimony, if credible, clearly leads to the inference that a deliberate effort was made to force the employees to use unusual methods of exit so as to divert them from areas of union handbilling. Board witnesses also recounted incidents where Jerold Zimmerman, the fifteen-year-old son of respondent's general manager and then an employee of the company, had grabbed handbills from employees saying, "Give me that handbill. I want that handbill. You don't want it." Jerold's grandfather, who was president of the company, was also described as taking a handbill from a truck driver saying, "Give me that handbill."

 There can be no doubt but that the deliberate efforts of management to prevent its employees from receiving or keeping union handbills is coercive in nature and if substantiated by competent evidence is a proper basis for finding a violation of Sec. 8(a) (1). Respondent, however, presses the credibility of its own witnesses who denied outright the occurrence of certain incidents and urges that the explanations given by management of the closed doors, i. e., that one door was broken and that the garage doors were closed to prevent theft of

valuable linens, constitute an undisputed refutation of the finding that the closed doors were an interference with employees' rights. The rule has been often stated and restated that the credibility of the witnesses and the inferences to be drawn therefrom are within the province of the Board and not the court, N. L. R. B. v. Beatrice Foods Co., 10 Cir., 183 F.2d 726, and cases cited therein at 728. Respondent's evidence, although not directly contradicted in some instances, presented but an attempt to controvert the interpretation of intent placed upon executive action by the union organizers and found to exist by the Board. This resolution of the conflict is supported by substantial evidence and will not be set aside, N. L. R. B. v. St. Clair Lime Co., 10 Cir., 315 F.2d 224.

■ Respondent further urges that it cannot be held responsible for an unfair labor practice which finds its origin in the activities of the two minor sons of general manager Zimmerman, unless specific agency is shown. We find no merit to the contention. These two young men, employees of the company and known to all to be sons of the general manager and grandsons of the president, were in a strategic position to subtly reflect the desires and policies of management. Their activities all occurred either in the presence of their authoritative relative or with his certain knowledge and approval and must carry with it consequences which the employer not only foresaw but which he must have intended. See N. L. R. B. v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308. The strict rules of *respondeat superior* are not available to defeat the "clear legislative policy to free the collective bargaining process from all taint of an employer's compulsion, domination, or influence," International Association of Machinists v. N. L. R. B., 311 U.S. 72, 80, 61 S.Ct. 83, 85 L.Ed. 50. Even respondent recognizes that, in view of the family relationship, a request for a hand-. bill made to an employee by one of the sons would scarcely have been refused and the entire atmosphere of the incident made company disapproval of union activities apparent.

■ Another activity participated in by one of the sons, this time nineteen-year-old Myron, was the admitted statement made over the company loudspeaker system that "James of the Laundry Workers stole a million dollars." [1] The trial examiner refused to allow respondent's counsel to cross examine as to the truth or falsity of the quoted statement and counsel now contends that, by showing that the statement was true, a legitimate concern for the welfare of its employees could have been demonstrated. But even if some aspect of relevancy is loaned to the proposed cross examination it is clear that the remoteness and potential complexity of the issue are such as to justify the trial examiner's refusal to explore the issue. Limitation upon the scope of cross examination upon collateral matters which bear slight relevancy to the determinative question is a matter of discretion for the trial examiner. Pacific S. S. Co. v. Holt, 9 Cir., 77 F.2d 192; Falstaff Brewing Corp. v. Thompson, 8 Cir., 101 F.2d 301. We find no abuse of such discretion in the case at bar.

■ Respondent's claim that the Board failed to give proper consideration to respondent's exceptions made to the report of the trial examiner is but a generalized attack upon the Board's procedure in adopting the report without elaboration. The report discussed and decided every issue necessary for a decision at that level and the Board is not required to make findings on immaterial issues, N. L. R. B. v. Sharples Chemicals, Inc., 6 Cir., 209 F.2d 645, nor to discuss or support correct rulings of the examiner upon questions such as the limitation of cross examination.

The order of the Board will be enforced.

1. This incident was not charged as a violation of the Act.