**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**W. R. HALL DISTRIBUTOR, W. R. Hall Transportation and Storage Company, W. R. Hall Moving and Storage, Respondents.**

**No. 7718.**

United States Court of Appeals
Tenth Circuit.

Feb. 5, 1965.

Anthony J. Obadal, Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Elliott Moore, Washington, D. C., Attorney, on the brief), for petitioner.

Harold B. Wagner, Denver, Colo., for respondents.

Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.

LEWIS, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order holding respondent Hall in violation of section 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1) and (5), by interfering with, restraining, and coercing its employees in the exercise of rights guaranteed them by the Act and by refusing to bargain in good faith with their certified representative. The order contains the standard cease and desist provision and requires the posting of customary notices. Enforcement of the order is resisted upon the principal claim that the record, considered as a whole, does not contain substantial evidence supporting the ultimate conclusions of the Board.

 The testimony of witnesses concerning the bargaining history of the parties is not in conflict as to fact and consequently the appellate issue dissolves to a determination of whether the Board has drawn permissible inferences from undisputed evidence. Our review of the evidence indicates that the record as a whole, although certainly not dictating the conclusions of the Board, gives adequate support for the issuance of its order. As we stated in NLRB v. Southwestern Porcelain Steel Corp., 317 F.2d 527, 528:

> "The question of good faith bargaining necessarily involves subjective considerations, that must be left to the inference drawing function of the Board, which has the 'difficult and delicate responsibility' of balancing the conflicting legitimate interests of the parties."

Respondent, found to be a single employer within the meaning of the Act, is engaged in the wholesale distribution of petroleum products and in the transportation and storage of household goods, operating out of Grand Junction, Colorado. On October 9, 1961, after winning a Board-conducted election, the Union[1] was certified as the collective bargaining agent for certain employees of respondent. Thereafter, on October 27, A. J. Stucker, an officer of the Union, contacted W. R. Hall, sole owner and president of respondent, to arrange a meeting. After a series of postponements requested chiefly by respondent, a meeting was held on December 13, when Stucker presented Hall with some general proposals, comprised of copies of contracts between the Union and other employers. Hall promised to study them, stating that he would probably obtain legal assistance. The next meeting was not held until January 24, 1962, the delay occasioned primarily by the death of Mrs. Hall on December 27. At this meeting, attended by Edward R. Toliver, a union organizer from Denver, in addition to Stucker and Hall, Hall merely stated that he was not prepared to negotiate a contract but would obtain counsel. Hall did retain an attorney, Harold B. Wagner, and the next meet-

---

[1]. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 16.

ing, with the four men present, was held on February 7 in Wagner's office in Denver. Although Wagner had not yet seen the typical Union contracts given to Hall, the parties discussed comparative aspects of the proposed contracts, excluded some as not applicable to respondent's operations, and discussed in general problems such as union security and grievance procedure. At the next meeting, held February 12, Hall became ill and had to leave the meeting; little was accomplished in his absence. Further negotiations were held on March 28, July 20, and July 28. Nothing was agreed upon and little or no progress was made.

▉▉▉ During this long period of negotiations there were numerous instances of postponements and delay found to be attributable to respondent, together with evidence of statements by respondent that it met only to avoid a charge of refusal to bargain; that it doubted whether the Union still represented a majority of employees and a new election should be held; and that it did not wish to contract beyond the initial certification year, even though, by July, it was almost over. On two separate occasions during the bargaining the Union filed unfair labor practice charges against respondent, which were later withdrawn. Other incidents show that during the seven or eight month period of purported negotiations the bargaining relationship became increasingly strained and unfruitful. On May 15, 1962 Toliver filed a third charge against respondent; it was amended on June 25 and resulted in the Board's complaint, which was issued on June 29. From this total premise the Board concluded that respondent had not bargained in good faith and had violated section 8(a) (5) and (1) of the Act. We cannot say the conclusion is unwarranted for good faith bargaining demands more than sterile and repetitive discussion of formalities

precluding actual negotiation, NLRB v. American Nat'l Ins. Co., 343 U.S. 395, 402–404, 72 S.Ct. 824, 96 L.Ed. 1027, and requires a sincere effort to reach agreement although not agreement itself. Delay, its cause and effect, cooperation between the parties or its lack, preparation for discussion or its lack, and the reasonableness or unreasonableness of demands are among those factors which the fact finder can consider in the difficult task of laying bare the subjective intent of the parties. Each of these factors is contained within this record and lends support to the decision of the Board that respondent lacked good faith in bargaining.

The Board also determined that respondent had violated section 8(a) (1) of the Act by the conduct of Thomas Hall, a son and employee of W. R. Hall.

At an undetermined time between December 1 and 15, 1961, Thomas Hall, a son and employee of W. R. Hall, discussed with another employee the possibility of a petition "to get the Union out." He then aided the drafting of such petition. Thereafter, on December 16, he approached another employee and requested that he talk with the other employees about signing a petition "to throw the Union out." He promised the employees pay of $2.25 per hour, plus time and a half for overtime, conditioned upon the petition's success.[2] The Board found that Thomas Hall was a supervisor or a representative of management and that his conduct constituted a violation of section 8(a) (1) of the Act.

▉▉▉ Respondent also challenges the Board's use of evidence outside the time and scope of the charge upon which the complaint was based. The charge referred to unfair labor practices committed "since on or about February 7, 1962," and respondent therefore contends that the Board could not base its

---

2. Respondent argues that the promise of $2.25 per hour cannot be construed as a benefit because its employees were already earning a minimum of $400 per month. However, the Board held that the offer in the context in which it was made constituted an illegal interference with the section 7 rights of respondent's employees.

conclusions, in whole or in part, on events occurring prior to that date. While respondent is correct in pointing out that the complaint is and must be based upon the charge, it is not restricted thereto. A charge is not a pleading and it need not comply with the rules of formal pleading; it merely sets in motion the machinery of an inquiry. Kansas Milling Co. v. NLRB, 10 Cir., 185 F.2d 413, 415. Although the Board cannot use its own initiative in respect to filing unfair labor practice charges, Hercules Powder Co. v. NLRB, 5 Cir., 297 F.2d 424, 433, it has wide leeway in including in its complaint allegations unearthed in its investigation of a charge timely filed related to those alleged in the charge. NLRB v. Waterfront Employers of Washington, 9 Cir., 211 F.2d 946, 955; NLRB v. Reliance Steel Products Co., 5 Cir., 322 F.2d 49, 53–54; Philip Carey Mfg. Co., Miami Cabinet Div. v. NLRB, 6 Cir., 331 F.2d 720, 731–732, cert. denied, 379 U.S. 888, 85 S.Ct. 159, 13 L.Ed.2d 92. Since the evidence complained of was related to the allegations in the charge and was not outside the six month period specified in section 10(b) of the Act, the Board correctly considered it in arriving at its conclusion.

Respondent's final claim is that Thomas Hall was not a supervisor, that his actions cannot be attributed to management, and that, in any case, his "casual" conversations were so "trivial" that enforcement of the order should be denied. There was evidence before the Board that Thomas Hall gave orders to some of the employees and W. R. Hall testified that he "depended" on his son, particularly when he, himself, was not present. It was also shown that his filial relationship with W. R. Hall gave him a special status among the men, which the Board properly considered in finding him to be a representative of management. See NLRB v. Champa Linen Service Co., 10 Cir., 324 F.2d 28, 30; NLRB v. Neiderman, 2 Cir., 334 F.2d 601, 603. The actions themselves, particularly when considered together, were not trivial and the Board could correctly find that they constituted a violation of section 8(a) (1).

The order will be enforced.