**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NEW MEXICO DISTRICT COUNCIL OF CARPENTERS AND JOINERS OF AMERICA, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NEW MEXICO DISTRICT COUNCIL OF CARPENTERS AND JOINERS OF AMERICA, United Brotherhood of Carpenters and Joiners of America, Respondents.**

Nos. 128–70, 129–70.

United States Court of Appeals, Tenth Circuit.

Feb. 4, 1972.

Vivian Asplund, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Glen M. Bendixsen, Atty., N.L.R.B., on the brief), for petitioner.

Gerald R. Bloomfield, Albuquerque, N. M. (Kool, Kool & Bloomfield, Albuquerque, N. M., on the brief), for respondents.

Before HILL, SETH and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

In these proceedings the National Labor Relations Board (the Board) petitions for enforcement of orders against respondent New Mexico District Council of Carpenters and Joiners of America (the Union) to cease and desist from unfair labor practices of restraining and coercing employers in the selection of representatives for bargaining and adjustment of grievances and other practices detailed separately below.[1] The Decision and Order in Nos. 128–70 and 129–70 are reported respectively at 177 N.L.R.B. No. 76 and 176 N.L.R.B. No. 105. Because of one principal common question of law the cases were consolidated for argument. We will, however, discuss the facts and issues separately.

### No. 128–70

By a written stipulation in No. 128–70 the facts were agreed on and the controversy was submitted to the Board. On this record the Board made findings as follows. Marvin Freese filed a charge against the Union in 1969 alleging that it had restrained and coerced A. S. Horner, Inc. (the Company) in the selection of its representatives for bargaining and adjustment of grievances in violation of § 8(b)(1)(B), 29 U.S.C.A. § 158(b)(1)(B). Freese was a superintendent in charge of a flood control project under construction by the Company, and thus was a supervisor under § 2(11) of the Act, 29 U.S.C.A. § 152(11). He was a member in good standing of Local Union No. 1351 in Leadville, Colorado.

The Union had lost representation elections in 1967 and 1968. Thereafter, in October, 1968, a representative of the Union came to the job site where Freese was working in New Mexico and inquired where he was from and where he maintained his union membership. Freese replied he was from Colorado and maintained his membership at Leadville. The Union representative ordered him to stop work and sign up on the local Union's "out of work" list. Freese refused to comply.

The Union representative preferred charges against him alleging violations of Section 46 of the Constitution and Laws of the Brotherhood, the parent or-

---

1. In No. 129–70 the United Brotherhood of Carpenters and Joiners of America (the Brotherhood) is also a respondent against which enforcement is sought.

ganization of the Union, and violation of portions of Article I of the Union's By-laws and Working Rules, which appear in the Board's Opinion. In essence the violations alleged in our record consisted of working for an employer who was not making payments into the Union's health and welfare fund and who had no working agreement with the Union.

Freese was shortly advised of the charges and that a hearing would be held by a trial committee. He attended the hearing and offered the defense that he was employed in a supervisory position. However, he was found guilty and fined $350. Freese did not pay the fine and did not comply with the rules thereafter. As a result the Local at Leadville refuses to accept dues until he pays the fines.

The Board held that the acts of the Union against Freese coerced and restrained the Company in violation of § 8(b)(1)(B). that the Company was not obligated to hire workers through the Union Hall nor to contribute to its health and welfare fund; that Freese could not have obtained any clearance or working permit to work for the Company since they were issued only for organizational purposes; and that the result of obtaining such a permit would be the diversion of Freese's loyalty from the Company to the Union. The Board concluded that the Union was thus using its internal working rules to boycott an employer who had no contract with the Union by making it a violation of the Union rules for its members to work for the employer. Thus, the Board held that compliance by Freese with the Union's demands would have had the effect of depriving the Company of its representative for purposes of collective bargaining and adjustment of grievances, and entered its order that the Union desist from the unfair labor practice.

In challenging the Board's order the Union argues that its action was protected by the proviso of § 8(b)(1)(A) of the Act, which says that such paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein. The Union relies upon N.L.R.B. v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123.

The Allis-Chalmers case held that the proviso permitted a union to fine its members for crossing picket lines and working during strikes. It, therefore, dealt with the rights of the Union to discipline its members under the statutory proviso which made it clear that by amendments made to the Act, interference was not intended with the internal affairs or organization of unions. N.L.R.B. v. Allis-Chalmers Mfg. Co., supra at 187, 87 S.Ct. 2001. We cannot agree, however, that our case in No. 128–70 is one basically involving the internal affairs of the Union, and accept the Board's conclusion that instead the Union had taken prohibited action against the Company, and was not disciplining a Union member on an internal affair.

We share the Board's view that our case is more akin to San Francisco-Oakland Mailers Union No. 18, International Typographical Union, 172 N.L.R.B. No. 252, which applied § 8(b)(1)(B) to prevent the citing of foremen, found to be supervisors, to appear before a union executive committee and the imposing of disciplinary fines for failure to do so. We feel the § 8(b)(1)(A) proviso dealing with internal affairs and organization of unions does not override the specific protection afforded by § 8(b)(1)(B) for the employer in selection of his representatives for collective bargaining and adjustment of grievances.

We are satisfied that the record amply supports the findings of fact, and that the Board's conclusions were proper and enforcement should therefore be granted in No. 128–70.

### No. 129–70

In this proceeding the Board petitions for enforcement against the Union and the Brotherhood of its order to desist from unfair labor practices in violation of §§ 8(b)(2), 8(b)(1)(A) and 8(b)

(1) (B) of the Act. The issues were tried to an Examiner and the Board accepted his findings, which will only be summarized here since the detailed facts appear in the Board's Opinion and Decision.

In 1967 the Union lost an election at A. S. Horner, Inc. (the Company). Prior to the election the Company had sent a letter to employees, including members of the Union. This letter was signed by G. R. Wilson, a superintendent of highway construction employees of the Company, and thus a supervisory employee who adjusted grievances.

On the day the Union lost the election an agent of the Union, Mr. R. Bloomfield, preferred charges with the Union against Wilson for violation of an alleged obligation under the Constitution of the Union by hiring nonunion carpenters and by signing the letter urging carpenter-employees to vote against the Union. Wilson did not appear at the Union trial but before that hearing by letter replied to the charges, saying that he was a supervisory employee whose loyalty must be directed first to the Company. He further contended that it was unlawful for the Union to require anyone to hire only Union men. Wilson was found guilty and fined $250.

The Examiner's findings adopted by the Board, referred to the letter and such activity by Wilson and said one reason for the fine was that he acted in the interest of the Company and against the interest of the Union; that the subsequent fining of Wilson coerced the Company and was in violation of § 8(b) (1)(B) of the Act; and that the imposition of the fine for hiring nonunion employees was an attempt to cause discrimination against nonunion applicants in violation of § 8(a)(3) of the Act, thus violating § 8(b)(2) and § 8(b)(1)(A).

█ In opposing enforcement the Union contends first that there is no substantial evidence to support the findings of the several violations. As to the §

8(b)(1)(B) violation, there was proof of the fining of Wilson for signing the letter and hiring the nonunion employees. He was in a supervisory position and, for reasons discussed in No. 128–70, we again agree with the Board's findings and its conclusion that there was a violation of § 8(b)(1)(B) which protects an employer's rights in the selection of his representatives for purposes of collective bargaining or the adjustment of grievances.

As to the findings of violation of § 8(b)(2) and § 8(b)(1)(A), there was proof supporting the finding that the fining of Wilson for hiring nonunion labor was an attempt to cause discrimination against nonunion applicants, and that there was no defined obligation or provision in the Union Constitution which Wilson was shown to have violated. The testimony was in conflict and the findings of the Board and the Examiner are accepted since substantial evidence supports them. N.L.R.B. v. Champa Linen Service Co., 324 F.2d 28 (10th Cir.). In sum, we are satisfied that the record supports the findings of these violations as well.

█ The remaining argument of the Union is that the complaint was barred by § 10(b) of the Act, 29 U.S.C.A. § 160(b), providing in substance that no complaint shall issue based on any unfair labor practice occurring more than six months prior to filing of the charge. The Union says that the filing of charges against Wilson, the Union trial and fining, the District Council's ratification of the fine and the payment of $50 by Wilson on the fine all occurred by September 21, 1967. Therefore, the Union argues that the complaint was untimely since it was not filed until May, 1968.[2]

The Board concluded, however, that the earlier events and the $50 payment made by Wilson were not dispositive. The payment was sent by a check to the Union to be held on account until Wil-

---

**2.** Amended charges were later filed but, in view of the conclusion we reach as to the date of the occurrence of the unfair labor practices, this is immaterial.

son's appeal was decided. It was not until April, 1968, that the General Executive Board ruled on Wilson's appeal and affirmed the Council's decision. The Board found that under the Union Constitution the $250 fine was not effective while Wilson was appealing. Thus, although some events occurred more than six months previously, we believe the dispositive date was when the fine became effective under the Union procedures. We feel that the Board's rejection of the § 10(b) bar argument was proper and is supported by Chauffers, Teamsters and Helpers "General" Local No. 200, 155 N.L.R.B. 273, 274.

We conclude that the record supports the findings and order of the Board as to the several violations. And, for reasons discussed in No. 128–70, we cannot agree with the argument that the actions in question concerned only internal affairs and organizational matters within the proviso of § 8(b)(1)(A) as construed by *Allis-Chalmers*.

In Nos. 128–70 and 129–70 enforcement will be granted.