**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**J. H. RUTTER REX MANUFACTURING CO., Inc., Respondent.**

**No. 18389.**

United States Court of Appeals
Sixth Circuit.

Sept. 19, 1969.

**1134**

Solomon Hirsh, Atty., N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., on brief.

Daniel Lund, New Orleans, La., for respondent; Henry J. Read, New Orleans, La., on brief; Montgomery, Barnett, Brown & Read, New Orleans, La., of counsel.

Before PHILLIPS, EDWARDS, and McCREE, Circuit Judges.

McCREE, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order requiring respondent to cease and desist from certain unfair labor practices, to make whole three employees who were discriminatorily discharged, and to bargain with the union upon request. The Board's Decision and Order are reported at 164 NLRB No. 10. (1967).

Respondent, a manufacturer of work clothing and casual wear, operates a warehouse in Columbus, Ohio. In mid-July, 1966, the union commenced a drive to organize the employees at this warehouse. The union's efforts were successful and five of the six warehouse employees signed authorization cards designating it their collective bargaining representative.[1] Accordingly, on July 21, the union sent a telegram to respondent apprising it:

"*  *  *  that Drivers and Warehousemen's Union Local 3027 AFL-CIO represents an over whelming (sic) majority of your employees. Demand is here with (sic) made to negotiate working agreement between the parties. Awaite (sic) your prompt reply."

After receiving this request for recognition, the company embarked on an anti-union campaign which, according to the findings of the Board, consisted of various unfair labor practices designed to dissipate the union's support. Spe-

---

1. The sixth warehouseman signed an authorization card two days after the union's demand for recognition.

cifically, the Board found that respondent violated Section 8(a) (1), 26 U.S.C. § 158(a) (1): (a) by threatening to close the Columbus warehouse rather than recognize the union; (b) by interrogating employees about their union sympathies; (c) by telling employees they would jeopardize their jobs if they joined the union; and (d) by promising and withholding wage increases. The Board also found that respondent violated Section 8(a) (3), 26 U.S.C. § 158 (a) (3), when it discharged three employees because of their union activity.[2] Finally, the Board determined that respondent violated Section 8(a) (5), 26 U.S.C. § 158(a) (5), by refusing to recognize the union despite its majority status[3] and by unilaterally granting wage increases while the union was the employees' bargaining representative.[4]

■ A review of the record as a whole convinces us that there is substantial evidence to support the Board's findings with respect to the violations of Sections 8(a) (1) and 8(a) (3). However, the Board's determination that the company violated Section 8(a) (5) by unlawfully refusing to bargain with the union was made prior to the Supreme Court's decision in N.L.R.B. v. Gissel Packing Co., Inc. et al., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), and was based on a finding that the refusal was not motivated by a good faith doubt of the union's majority status.

■ In *Gissel Packing* the Supreme Court concluded that an employer's subjective motivation in rejecting a request for recognition is "largely irrelevant." The important inquiry in determining the legality of the refusal to bargain is whether the employer also committed serious unfair labor practices which tend "to undermine majority strength and impede the election processes." 395 U.S. at 597, 89 S.Ct., at 1940.

■ Although it may be implicit in the Board's decision that the unfair labor practices engaged in here are sufficiently serious to support the finding of an unlawful refusal to bargain, the Board made no express finding concerning the effect of these unfair labor practices. In particular, the Board did not find that the "possibility of erasing the effects [of the violations] and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight." N.L.R.B. v. Gissel Packing Co., Inc. et al., 395 U.S., at 597, 89 S.Ct., at 1940. Under these circumstances we remand this case to the Board for reconsideration and further findings in light of *Gissel Packing.*[5]

■ Of course, whether respondent's unilateral wage increase violated Section 8(a) (5) depends on whether respondent was obligated to bargain with the union at the time it was granted. N.L.R.B. v. Downtown Bakery Corp., 330 F.2d 921, 927 (6th Cir. 1964). Accordingly, this issue cannot be decided until the Board determines whether respondent's refusal to bargain violated Section 8(a) (5).

The Board's order is enforced with respect to the violations of Sections 8(a) (1) and 8(a) (3). The cause is remanded for further findings with respect to the violations of Section 8(a) (5).

---

2. These discharges occurred on July 28, 1966. The next day respondent offered immediate reinstatement to all three employees and they returned to work on August 3.

3. The company rejected the union's demand for recognition by a telegram dated July 25 in which it stated:
   "Re your telegram. Suggest you proceed through Labor Relations Board for determination of whether you represent our employees. Several years ago a union claimed representation and Board election proved otherwise."

4. The wage increases, granted between July 28 and August 3, implemented the earlier promises of such increases.

5. This is consistent with the Supreme Court's action in Thrift Drug Co. v. N. L.R.B., 395 U.S. 828, 89 S.Ct. 2125, 23 L.Ed.2d 737 (1969), and Lou DeYoung's Market Basket, Inc. v. N.L.R.B., 395 U.S. 828, 89 S.Ct. 2125, 23 L.Ed.2d 737 (1969), both of which were remanded for further consideration in light of *Gissel Packing.*