**PIONEER INN ASSOCIATES, d/b/a Pioneer Inn and Pioneer Inn Casino, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Hotel, Motel, Restaurant Employees & Bartenders Union, Local No. 86, Hotel & Restaurant Employees & Bartenders International Union, AFL–CIO, Intervenor.**

No. 77–1825.

United States Court of Appeals, Ninth Circuit.

July 19, 1978.

Robert V. Magor (argued), of Severson, Werson, Berke & Melchior, San Francisco, Cal., for petitioner.

Ann Libbin (argued), Washington, D. C., for respondent.

Before KILKENNY, Senior Circuit Judge, CHOY, Circuit Judge, and EAST,* Senior District Judge.

EAST, Senior District Judge:

## THE REVIEW

The petitioner Pioneer Inn Associates (Company) seeks to set aside a bargaining order of the National Labor Relations Board (Board). The Board has cross-petitioned for enforcement of its order, which is reported at 228 NLRB 160. Jurisdiction is conferred by 29 U.S.C. § 160(e) and (f). We enforce the order.

## ISSUES

The two issues on review are:

1. Whether during the term of an existing contract the Company violated § 8(a)(5) and (1) of the National Labor Relations Act by (a) unilaterally substituting a new medical care plan for that specified in the contract, and (b) refusing to honor a provision giving Union representatives access to the Company's premises to monitor working conditions.

2. Whether the Company violated § 8(a)(5) and (1) of the Act by withdrawing recognition of and refusing to bargain with the Union over the terms of a new contract.

## FACTS

On June 1, 1970, the Company and the intervening Union entered into a three year collective bargaining agreement covering the Company's hotel service (maids and bellmen) and restaurant and bar employees. The agreement provided, *inter alia*, that the Company would contribute to a medical care plan, Union representatives would be allowed access to monitor working conditions and that absent timely notice by either party to amend or terminate, it would automatically renew itself on a year-to-year basis after August 31, 1972. Neither party submitted notice and the contract remained in effect through August 31, 1975.

After the agreement was signed, there was a period from 1971 or 1972 until the middle of 1974 when the Union was inactive and had little or no contact with the Company, neither administering the terms of the contract nor attempting to negotiate a new agreement.

In June 1974, the Union was placed under trusteeship[1] by its International and there was a resurgence of Union activity. In the words of the Administrative Law Judge, it "resumed its role as the employees' bargaining representative . . .." In August, 1974, Union representatives invited the Company's maids to a union meeting. Between December, 1974 and April, 1975, the Union actively processed the grievance of one of the Company's bartenders. In fact, an unfair labor practice charge filed by the Union over this grievance was withdrawn when the Company assured the Board that it was willing to meet with the Union to resolve the prob-

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The imposition of trusteeship does not affect the Union's status as exclusive bargaining rep-

resentative. *Florida Mining & Materials Corp. v. NLRB*, 481 F.2d 65, 69-70 (5th Cir. 1973), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974).

lem. In April, 1975 the Company unilaterally substituted a new medical care plan for the one specified by the contract, and the Union protested this action to the Company. On two occasions in May, 1975, Union representatives, attempting to check working conditions, were refused access to the Company's premises, the Company claiming that it no longer had a contract with the Union.

In the following June, the Union filed unfair labor practice charges against the Company concerning its unilateral change of the medical care plan and its refusal to allow Union representatives access to check working conditions. The Union also gave timely notice that it wanted to renegotiate the contract. In August, after an exchange of correspondence, the Company responded that it was withdrawing recognition because it had "a genuine good faith doubt" that the Union represented a majority of the employees in the unit. In October, the Union's unfair labor practice charges were amended to add the refusal to renegotiate the terms of the contract.

DISCUSSION

1. *Unilateral Change of Medical Plan and Refusal of Access.*

■ Even in the absence of a contract, after certification a union enjoys a presumption of majority status. This presumption is irrebuttable for one year and rebuttable thereafter. *NLRB v. Burns Security Services,* 406 U.S. 272, 279 n.3, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). This rule is also applicable where, as here, a union is voluntarily recognized by an employer. *NLRB v. Denham,* 469 F.2d 239, 244 (9th Cir. 1972), *vacated on other grounds,* 411 U.S. 945, 93 S.Ct. 1925, 36 L.Ed.2d 407 (1973).

■ When the employer and the union enter into a collective bargaining agreement, the Board has ruled that a similar presumption of majority status is raised and continues for the duration of the contract. *Shamrock Dairy, Inc.,* 119 NLRB 998 (1957), 124 NLRB 494, 495–96 (1959), *enforced sub. nom., International Bro. of Teamsters, etc. v. NLRB,* 108 U.S.App.D.C.

117, 280 F.2d 665, *cert. denied,* 364 U.S. 892, 81 S.Ct. 224, 5 L.Ed.2d 188 (1960).

Here, the Administrative Law Judge found the contract was valid but concluded that the Union lost the presumption of majority status because it "abandoned and failed to represent the employees" between 1971 and 1974. This led him to recommend dismissal of the charges. The Board disagreed and held that the presumption attached "irrespective of the degree to which the Union may or may not have been deficient in the administration of that agreement." Applying principles of the "contract bar" rule by analogy, the Board found that that presumption could only be dislodged by a showing sufficient to prevent application of the contract bar rule.

■ Generally speaking, under the contract bar rule, the Board refuses to conduct decertification elections—whether requested by the employer, employees, or another union—during the life of the contract. *Hexton Furniture Co.,* 111 NLRB 342, 344 (1955). The rule was adopted to protect the bargaining atmosphere, *id.,* and is applied even if a majority of the employees withdraw their support. *Confectionery & Tobacco Drivers & Warehousemen's Union v. NLRB,* 312 F.2d 108, 112 (2d Cir. 1963); *NLRB v. Marcus Trucking Co.,* 286 F.2d 583, 593 (2d Cir. 1961). It follows that during the time the rule applies "an employer cannot use doubt about a union's majority as a defense to a refusal-to-bargain charge. . . ." *Burns Security Services,* 406 U.S. at 290 n.12, 92 S.Ct. at 1583.

■ Although the rule is expressly designed to bar decertification elections during the life of valid contracts, its underlying principles are applicable here. Under the rule an employer is prevented from avoiding his contract obligations by petitioning for a decertification election. Here, although the Company does not seek a decertification election, it seeks the same result by professing a doubt of majority status and refusing to adhere to the contract terms. The Board correctly contends that

while the rule applies, the employer must adhere to the terms of the contract. *Marcus Trucking Co.*, 286 F.2d at 593.

█ Relying on *NLRB v. Heyman*, 541 F.2d 796 (9th Cir. 1976), and *NLRB v. Tragniew, Inc.*, 470 F.2d 669 (9th Cir. 1972), the Company counters that the Board has improperly used an irrebuttable presumption of majority status. In *Heyman* and *Tragniew, Inc.*, the Board's error was in adhering to the presumption of majority status notwithstanding that the underlying contracts had been found invalid either due to a prior judicial decision or due to an Administrative Law Judge's undisputed findings of fact. These cases are inapposite because here the Administrative Law Judge did not find the underlying contract invalid. Rather, notwithstanding his recognition of the contract's validity, he erroneously found that subsequent Union inactivity could displace the attachment of the presumption.[2]

█ Further, application of contract bar principles does not make the presumption of majority status irrebuttable. There are situations in which the Board will not or ceases to apply the rule. For example, the rule ceases to be applicable when the union is "defunct"—that is, "unwilling or unable" to represent the employees *at the time its status is questioned. Loree Footwear Corp.*, 197 NLRB 360 (1972); *Hershey Chocolate Corp.*, 121 NLRB 901, 911 (1958). The Board decided that the Company's union inactivity argument was analogous to the defunct union exception and measured it against that standard. Although the Union was dormant between 1971 and 1974, it had "resumed its role" by the time the Company questioned its status. Thus, the Company's union inactivity claim was properly rejected.

## 2. Withdrawal of Recognition.

The Board found that the Company violated 8(a)(5) and (1) by withdrawing recognition and refusing to negotiate over a new

contract after being requested to do so by the Union. The Company claims it was justified in doing so by a reasonable good faith doubt as to the Union's continuing majority status. Although the Administrative Law Judge expressly did not reach this issue, the Board considered and rejected that defense.

█ The governing principles are easily stated, but their application to the facts in this case is more difficult. A union's majority status is presumed to continue even after the expiration of a bargaining agreement. *NLRB v. Vegas Vic, Inc.*, 546 F.2d 828, 829 (9th Cir. 1976). The employer may overcome the presumption by establishing a reasonable good faith doubt of continuing majority support. *Id.* This doubt must be based on objective considerations. *Id.* The objective evidence submitted by the Company must be "clear, cogent and convincing." *Tragniew, Inc.*, 470 F.2d at 674–75. Nevertheless, "subjective evidence may be used to bolster the argument that such doubt existed at the relevant time." *Vegas Vic, Inc.*, 546 F.2d at 829.

The Company relies on four factors which it says collectively establish a reasonable doubt: (1) the Union's inactivity between 1971 and 1974; (2) conversations with supervisors who reported that employees under their supervision had not indicated support for the Union; (3) lack of Union membership; and (4) substantial turnover and expansion of the unit.

█ It is clear that a union's inactivity, particularly in failing to monitor contract provisions and pursue grievances, is a factor to be considered in arriving at a reasonable good faith doubt. *Star Mfg. Co. v. NLRB*, 536 F.2d 1192, 1194 (7th Cir. 1976); *Ingress-Plastene, Inc. v. NLRB*, 430 F.2d 542, 547 (7th Cir. 1970). The Board has admitted as much in *Sierra Development Co. d/b/a Club Cal-Neva*, 231 NLRB No. 5 (1977). The

**2.** The Company's reliance on *Bender Ship Repair Co.*, 188 NLRB 615 (1971) (unlawful members only contract); *McDonald's Drive-In Restaurant*, 204 NLRB 299 (1973); and *Ace-Doran*

*Hauling and Rigging Co.*, 171 NLRB 645 (1968) (sham contracts in which the parties had no intention of establishing a true bargaining relationship), is misplaced for the same reason.

Union did not attempt to negotiate a new contract until three years after the expiration of the agreement signed in June, 1972. It also seems beyond dispute that the Union ceased monitoring compliance with the contract terms until 1974 or 1975. However, as the Board points out, the Union did prosecute the *Busby* grievance and the record does not indicate that other grievances were brought to it and not pursued. Further, the Board properly considered it suspicious that the Company failed to assert inactivity as a reason for doubt of majority status until after the Union had resumed an active role. *NLRB v. King Radio Corp.*, 510 F.2d 1154, 1156–57 (10th Cir.), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975).

 The Company correctly points out that employee expressions of dissatisfaction with a union may prompt a reasonable doubt of majority status. *E. g., Automated Business Systems v. NLRB*, 497 F.2d 262, 264 (6th Cir. 1974), and *National Cash Register v. NLRB*, 494 F.2d 189, 195 (8th Cir. 1974) (substantial number of employees filed decertification petitions). However, the Board rejected the Company's assertions of employee dissatisfaction with the Union as "too vague and generalized" to be of help since they were gleaned from conversations in which supervisors reported little more than that few or no employees had mentioned or expressed interest in the Union. The supervisors' reports primarily involve statements of lack of interest in membership; only two or three employees directly expressed dissatisfaction. The Board's position draws judicial support from *NLRB v. Leatherwood Drilling Co.*, 513 F.2d 270, 273 (5th Cir. 1975), where the Court discounted evidence that a manager had not heard employees talk about the union. Even if the comments were construed to be equivalent to expressions of lack of interest in membership, *Retired Persons Pharmacy v. NLRB*, 519 F.2d 486, 490

(2d Cir. 1975), or as evidence of actual lack of membership, *Vegas Vic, Inc.*, 546 F.2d at 829, they would not establish a reasonable doubt. This is particularly true in a right-to-work state like Nevada. *Terrell Machine Co. v. NLRB*, 427 F.2d 1088, 1090 (4th Cir. 1970). On the other hand, the Union's long period of inactivity may have muted expressions of discontent to the extent that old employees were convinced the Union was gone from the scene or that new employees did not even know of its existence.

The Board discounted the Company's claims about turnover and expansion of personnel on the ground that the normal presumption that new employees support the Union in the same proportion as those in the original unit remains intact absent objective evidence that new employees were dissatisfied. *Compare, e. g., NLRB v. Washington Manor, Inc.*, 519 F.2d 750, 753 (6th Cir. 1975), and *Zim's Foodliner, Inc. v. NLRB*, 495 F.2d 1131, 1141 (7th Cir. 1974), with *National Register Co. v. NLRB*, 494 F.2d at 194–95, and *NLRB v. H. P. Wasson & Co.*, 422 F.2d 558 (7th Cir. 1970).

Notwithstanding its burden to produce clear and convincing evidence to overcome the presumption of the continuing majority status, the Company gave the Board little or no objective evidence of employee dissatisfaction with the Union, and yet lawful doors were open to it for the garnering of such evidence. For example, *Struksnes Construction Co.*, 165 NLRB 1062, 1063 (1967), establishes guidelines for polling employees on union support.[3]

 Although the Board must consider the cumulative effect of the factors cited by the Company, *Ingress-Plastene, Inc.*, 430 F.2d at 547, the Board may strike the balance more favorable toward the union when the union's status is challenged by the employer rather than the employees

---

**3.** Noncoercive employee polls are obviously not the only source of corroborating objective evidence. However, where, as here, the company's doubt is based on factors which, standing alone, are likely to be insufficient, such polls give it a tool to protect itself from taking precipitous action.

themselves. *E. g., Retired Persons Pharmacy*, 519 F.2d at 490; *NLRB v. Frick Co.*, 423 F.2d 1327, 1334–35 (3d Cir. 1970). We are bound to enforce the Board's decision if it is supported by substantial evidence viewing the record in its entirety. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Denham*, 469 F.2d at 245. We find such substantial evidence in the record.

The Company's petition to set aside the bargaining order is denied and the Board's Order reported at 228 NLRB 160 is enforced.

ENFORCED.