577 F.2d 305
 99 L.R.R.M. (BNA) 2046, 84 Lab.Cas. P 10,705
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
PHYSICIANS AND SURGEONS COMMUNITY HOSPITAL, Respondent.
 No. 77-3160.
 United States Court of Appeals,
Fifth Circuit.
 July 28, 1978.
 
 Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr., Supervisor, Elizabeth Bunn, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.
 Victor A. Cavanaugh, Atlanta, Ga., for respondent.
 Application for Enforcement of an Order of the National Labor Relations Board.
 Before TUTTLE, GEE and FAY, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 In the present controversy the National Labor Relations Board seeks enforcement of an unfair labor practice charge and a bargaining order against Physicians and Surgeons Community Hospital in Atlanta, Georgia, on the ground that the hospital refused to continue negotiations with the Service Employees International Union. The respondent hospital argues that the Board's order should not be enforced, either because the union never attained the support of a majority of the employees or, alternatively, because the hospital entertained good-faith doubts as to the union's continuing majority status.
 
 
 2
 During the summer of 1974, the union took up an organizing campaign at the Bolton Road Hospital, the predecessor to the Physicians and Surgeons Community Hospital. The union collected authorization cards during this campaign; in August it informed the Bolton Road Hospital management that a majority of the service employees had designated the union as their bargaining representative, and it requested recognition as such. Within a short time the union filed a representation petition with the Board; the hospital and the union filed a Stipulation for a Certification upon Consent Election; and, finally, the hospital agreed to bargain without holding an election, since the number of signed cards appeared to constitute a majority of the employees. The first bargaining session was held on October 30, 1974, and eight further sessions were held through late 1975, during which time a number of issues were agreed upon. At the end of 1975 a creditor of the hospital foreclosed on its interest and took title to the hospital, and a bargaining session that had been scheduled for December 4, 1975, was postponed to give the hospital management time to "stabilize." However, when no further negotiations were scheduled, the union inquired on May 14, 1976, about resuming the bargaining sessions. The hospital replied on June 30 that it now had a good-faith doubt that the union represented a majority of the employees. Hereupon the union filed an unfair labor practice charge with the National Labor Relations Board. A hearing was held before an Administrative Law Judge; the Board adopted his findings, holding that the hospital had violated section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), and ordering the hospital to cease its unlawful practices and to recognize and bargain with the union. The Board now petitions for enforcement of this order.
 
 
 3
 In contesting enforcement the hospital argues first that the union never had majority status in the bargaining unit, and thus the hospital was never under any duty to bargain. Indeed, it points out that the various documents and letters circulating between the union, the employer, and the Board in August 1974 contained some discrepancies in the descriptions of the employees to be included in the unit; but according to the hospital, no matter which definition of the unit is accepted, the union had no majority. The hospital arrives at this conclusion chiefly on the basis of a list of employees it compiled from 1974 payroll records for purposes of this litigation.
 
 
 4
 The ALJ, whose opinion was adopted by the Board, noted that the hospital's new list appeared to be authentic. But he nevertheless concluded that a more credible list was one prepared by the hospital administrator in 1974 at the time the consent election was under discussion. He reasoned that the latter list was more likely to reflect the 1974 classifications of employees than was a list compiled much later from raw payroll data. He determined from the earlier list the classifications of employees included in the unit and also determined that the union had collected cards from a majority of the employees in these classifications.[1]
 
 
 5
 We do not disturb this finding of the ALJ and the Board. The new list upon which the hospital chiefly relies is itself based on information that presumably was available in 1974, and we think that the ALJ and the Board could reasonably suppose that a list actually composed in 1974 was a more accurate reflection of the employees in various employment categories as of that time. Even supposing that this court might arrive at a contrary result if we were to weigh the evidence de novo, we will not overturn the Board's findings if it has made a plausible inference from the evidence. Sturgis Newport Business Forms, Inc. v. NLRB, 563 F.2d 1252 (5th Cir. 1977); Mueller Brass Co. v. NLRB, 544 F.2d 815 (5th Cir. 1977). We have recently noted that the credibility resolutions of the Administrative Law Judge and the Board are entitled to affirmance unless they are inherently unreasonable or self contradictory, NLRB v. National Fixtures, Inc., 574 F.2d 1305 (5th Cir. 1978); see also Helena Laboratories Corp. v. NLRB, 557 F.2d 1183, 1187 (5th Cir. 1977); and certainly we must recognize the Board's expertise in labor relations law and in weighing evidence in the light of that expertise. See Sturgis, supra. In weighing and reconstructing the evidence in this case the ALJ and the Board have concluded that the union represented a majority of the employees in an appropriate service unit in August 1974, and we think that substantial evidence supports this conclusion.[2]
 
 
 6
 The hospital argues that even if the union had majority status at the outset, obligating the employer to bargain with it at that time, the hospital was entitled to cease bargaining later because it had a good-faith doubt that the union continued to represent a majority of the employees. When a union is certified by the Board, it enjoys an irrebuttable presumption of majority support for a year following certification, and thereafter the presumption is rebuttable by objective evidence. J. Ray McDermott & Co. v. NLRB, 571 F.2d 850, 858 (5th Cir. 1978); NLRB v. Gulfmont Hotel, 362 F.2d 588 (5th Cir. 1966). Here, of course, the union was not certified by the Board, and more than a year had passed between the hospital's initial voluntary recognition and its refusal to bargain. But since the union was voluntarily recognized as having majority status at the outset of bargaining, this union, like a certified union, should enjoy the presumption of a continuing representative status a presumption that may be overcome only by convincing evidence of the employer's good-faith doubt about the union's continuing majority. See NLRB v. Frick & Co., 423 F.2d 1327 (3d Cir. 1970).
 
 
 7
 The hospital cannot claim that any good-faith doubt was based on the new list of employees it compiled for the present litigation, since it had not begun to compile this list at the time it refused further bargaining. Cf. Hirsch, etc. v. Pick-Mt. Laurel Corp., 436 F.Supp. 1342 (D.N.J.1977) (a case in which a successor employee knew when it refused to bargain that, among other things, the employees had had no chance to choose the union as their representative in prior negotiations). The other factors on which the hospital now claims a good-faith doubt about the union's continuing majority status are gaps in the bargaining sessions, employee disinterest in union activities, employee turnover, a complaint of one employee against the union, and lack of employees on the bargaining team. These factors may well be explainable on grounds other than the employees' change of heart about union representation, if indeed any of these factors, alone or together, could support a good-faith doubt as to the union's continued majority status. See McDermott, supra at 859, and cases cited therein; see also Retired Persons Pharmacy v. NLRB, 519 F.2d 486 (2d Cir. 1975); NLRB v. Schill Steel Products, 480 F.2d 586 (5th Cir. 1973). As we said in McDermott, 571 F.2d at 859:
 
 
 8
 The kind of "objective evidence" ordinarily sufficient to overcome a rebuttable presumption of majority support would be greater than fifty percent employee support for a decertification petition, Automated Business Systems v. NLRB, 6 Cir. 1974, 497 F.2d 262, or thirty percent support for decertification combined with other indicia of non-support, National Cash Register Co. v. NLRB, 8 Cir. 1974, 494 F.2d 189.
 
 
 9
 As in McDermott, the Board could reasonably conclude that the hospital's evidence falls short of these standards. The hospital's refusal to bargain was therefore unlawful, and the Board's order is ENFORCED.
 
 
 
 [1]
 Two similar but not identical lists of employees were prepared by the hospital administration during this period in 1974; although the ALJ may have made a minor numerical error in counting the authorization cards, there does appear to be a majority of card signatories among the employees on at least one of these lists
 
 
 [2]
 The Board also argues that the employer is barred from raising the issue of the union's lack of majority status by § 10(b) of the Act, 42 U.S.C. § 160(b). This section places a six-month statute of limitations on unfair labor practice charges. The section applies, the Board says, because the hospital's defense is based on the assumption that the hospital and the union acted unlawfully in bargaining when the union had no majority status. Since we think that there was substantial evidence from which the Board could conclude that the union had majority status at the outset of the parties' bargaining, we do not rule on this contention