648 F.2d 553
 105 L.R.R.M. (BNA) 3421, 90 Lab.Cas. P 12,399
 SAHARA-TAHOE CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
and
Hotel, Motel, Restaurant Employees and Bartenders Union
Local 86, Hotel and Restaurant Employes and
Bartenders International Union, AFL-CIO,
Intervenor.
 No. 79-7152.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 12, 1980.
Decided Nov. 28, 1980.
 
 Linda S. Klibanow, Parker, Milliken, Clark & Ohara, Los Angeles, Cal., for petitioner.
 Eric Moskowitz, N. L. R. B., Washington, D.C., argued for respondent; Elliot Moore, N. L. R. B., Washington, D.C., on brief.
 On Petition for Review and Cross Application for Enforcement of an Order of the National Labor Relations Board.
 Before ANDERSON, FERGUSON and NELSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 The National Labor Relations Board (Board) found that Petitioner, Sahara-Tahoe Corporation, had committed unfair labor practices under 29 U.S.C. § 158(a)(5) and (1) by withdrawing recognition and refusing to bargain with the Union. Petitioner argues that its actions were justified because it had a good faith reasonable doubt that the Union represented a majority of the employees in the bargaining unit.
 
 
 2
 After a thorough evaluation of the record on appeal, we have determined that the Board's decision is supported by substantial evidence and we therefore enforce its order.
 
 DISCUSSION
 Refusal to bargain
 
 3
 Where an employer has been charged with a violation of 29 U.S.C. § 158(a)(5), refusal to bargain, the General Counsel must show that the union represented a majority of the employees in the unit at the time the employer refused to bargain with the union. NLRB v. Tahoe Nugget, Inc., 584 F.2d 293 (9th Cir.), cert. denied, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979). In its attempt to meet this burden of proof, the General Counsel is assisted by a presumption of majority union support. "For a reasonable time, usually one year, after certification or voluntary recognition, majority support is irrebuttably presumed absent 'unusual circumstances.' After one year, the presumption becomes rebuttable." Id. at 297. Where sufficient proof to rebut the presumption is not presented by the employer, the presumption carries the General Counsel's burden of proof regarding the union's majority status. Id.
 
 
 4
 To rebut the presumption, an employer may show that it had a good faith reasonable doubt of the union's majority support at the time it refused to bargain. NLRB v. Silver Spur Casino, 623 F.2d 571, 577 (9th Cir. 1980). "If the presumption is deemed rebutted, then the General Counsel must come forward with evidence to satisfy its burden of proof regarding the union's majority status. National Cash Register Co. v. NLRB, 494 F.2d 189 (8th Cir. 1974)." Id. at 577. "Whether an employer has established a good faith reasonable doubt defense is a determination that must be made initially by the Board. The Board's decision will be upheld if it is supported by substantial evidence on the record as a whole." Id. at 579, citing Sahara-Tahoe Corp. v. NLRB, 581 F.2d 767, 771 (9th Cir.), cert. denied, 442 U.S. 917, 99 S.Ct. 2837, 71 L.Ed.2d 284 (1979).
 
 
 5
 In the prior "casino cases,"[1] some evidence was presented of employee discontent with the union, high employee turnover, low union membership, financial difficulties of the union, and a vigorous union membership drive. However, we concurred with the Board's decision that the evidence, standing alone or cumulatively, presented only an ambiguous inference that the union had lost its majority support.
 
 
 6
 While Sahara-Tahoe presented similar evidence of employee discontent, high employee turnover, low union membership, financial difficulties of the union, and a vigorous union membership drive, Sahara-Tahoe argues that its additional evidence was sufficient to establish its good faith reasonable doubt. Sahara-Tahoe also presented evidence that bargaining unit members failed to honor a picket line of a separate unit of employees within the same union. The Board, however, deemed the crossing of the picket line to be only marginally relevant as the employer had not shown that the picket line had been instituted to create a work stoppage. The record supports the Board's conclusion.
 
 
 7
 More significantly, however, Sahara-Tahoe additionally showed that a petition which was captioned "Employees who do not want to belong to any culinary union," was signed by more than 30% of the employees in the bargaining unit. Though the petition had not been accepted for filing by the Board, Sahara-Tahoe was aware of the existence of the petition prior to its refusal to bargain.
 
 Petitions for Decertification
 
 8
 Employees may seek to decertify their bargaining representative by filing a petition with the Board alleging that a substantial number of employees assert that the union is no longer the representative of a majority of the employees within the unit. 29 U.S.C. § 159(c)(1)(A)(ii). The Board has determined that a "substantial number of employees" shall mean at least 30% of the employees within the bargaining unit. 29 CFR § 101.18(a). This 30% showing can be made by the submission of a petition containing the signatures of at least 30% of the employees.
 
 
 9
 In Telautograph Corporation, 199 NLRB 892 (1972), the Board stated that where a decertification petition is timely filed by employees and there is no evidence of unfair labor practices that may have induced a decline in union support, the employer must discontinue bargaining with the incumbent union until the question of representation has been settled by the Board.[2] Thus, the filing of a decertification petition with the requisite 30% showing alone might justify an employer's refusal to bargain with the union. National Cash Register Co. v. NLRB, 494 F.2d 189 (8th Cir. 1974); but see, Allied Industrial Workers, AFL-CIO Local Union No. 289 v. NLRB, 476 F.2d 868, 881 (D.C.Cir.1973).[3] In any event, evidence of a 30% support for decertification with other indicia of nonsupport for the union can establish an employer's good faith reasonable doubt of the union's majority status and justify its refusal to bargain. J. Ray McDermott & Co., Inc. v. NLRB, 571 F.2d 850, 859 (5th Cir.), cert. denied, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); National Cash Register Co. v. NLRB, 494 F.2d at 194; see also, Pioneer Inn Associates v. NLRB, 578 F.2d 835, 840 (9th Cir. 1978), and NLRB v. Tahoe Nugget, Inc., 584 F.2d at 305.
 
 
 10
 In the present situation, an employee in the bargaining unit, Wolchow, attempted to file a decertification petition with the Board. The petition, however, was rejected. The letter Wolchow received from the Board stated that an election could not be held in the unit because unfair labor practice charges concerning that unit were pending before the Board. However, the unit that the Board's letter referred to was a different unit than which Wolchow's petition concerned. Wolchow explained the situation in a subsequent letter to the Board. But the Board then informed Wolchow that the petition was time barred until after the expiration of the contract on November 30, 1976.[4] Wolchow did not attempt to refile the petition after the expiration of the contract period.
 
 
 11
 There is no claim by Sahara-Tahoe that the petition should now be considered to have been filed when it was originally submitted by Wolchow. Thus Sahara-Tahoe does not contend that there was a timely filing of the petition such that under Telautograph Corporation it would have been justified in refusing to bargain with the union. Rather, Sahara-Tahoe contends that even though the petition was not actually filed, its knowledge of the petition, along with the other factors, establish that its refusal to bargain was based upon a good faith reasonable doubt of the union's majority support. Its knowledge was that Wolchow had attempted to file the petition twice, but that the petition had been rejected both times on purely procedural grounds; in the course of rejecting the petitions, the Board at no time stated that the petition was defective in content or form; the petition had been signed by 83 employees; and it had been informed by Wolchow that approximately 70 more employees out of the 250-280 total bargaining unit members were also in favor of the petition though they did not wish to sign.
 
 
 12
 The Board, however, discounted the significance of the petition. The Board stated,
 
 
 13
 "In our view, the employee petition here is a slender thread which, by itself, is an inadequate consideration to support a good faith doubt. The petition is signed by barely 30 percent of the unit; it is undated; the wording, as noted by the Administrative Law Judge does not unambiguously indicate a desire not to be represented by the Union; and, although more than 2 weeks elapsed between the expiration of the last collective bargaining agreement and the Respondent's withdrawal of recognition, no attempt was made to refile the petition with the Board. We therefore cannot accord much weight to this insubstantial factor in absence of other probative evidence to support a doubt of majority."
 
 
 14
 241 NLRB No. 12 n.1.
 
 
 15
 We concur with the Board's conclusion under the facts of this case. The petition relied upon by the employer did not, by itself or together with the other evidence presented, unequivocally indicate that the union support had declined to a minority. However, by this decision, we do not imply that a petition which unambiguously indicated a desire not to be represented by the union and which was signed by a substantial number of employees could not be considered by an employer in arriving at its good faith doubt, if that petition had not been filed with the Board.
 
 
 16
 But, as we stated before, "(I)n refusing to bargain because of an alleged decline in union adherents, the employer is acting as vicarious champion of its employees, a role no one has asked it to assume." NLRB v. Tahoe Nugget, 584 F.2d at 301. Thus, before refusing to bargain with a union, an employer should have before it evidence which unequivocally indicates that the union no longer has the majority support of the employees. The evidence considered by Sahara-Tahoe did not justify its refusal to bargain.
 
 
 17
 The Board's order is ENFORCED.
 
 
 
 [1]
 See, NLRB v. Tahoe Nugget ; Sahara-Tahoe Corporation v. NLRB ; NLRB v. Sierra Development Co., 604 F.2d 606 (9th Cir. 1979); NLRB v. Carda Hotels, 604 F.2d 605 (9th Cir. 1979); NLRB v. Silver Spur Casino
 
 
 [2]
 But see, Lammert Industries, 229 NLRB 895 (1977), where two members of the Board disavowed the statement in Telautograph Corporation that the filing of a decertification petition suspends an employer's bargaining obligation; two members felt that statement was still valid and the last member of the Board felt that it was unnecessary to rule on the continuing vitality of Telautograph Corporation at that time
 
 
 [3]
 However, it should be noted that Allied made no mention of Telautograph Corporation in deciding that a petition with only a 30% showing of support is an insufficient basis for refusing to bargain
 
 
 [4]
 "In order to stabilize the employer-union relationship the Board has established a 'contract bar' doctrine whereby a valid contract will ordinarily prevent the holding of an election for a certain period of time." C. Morris, The Developing Labor Law, 167 (1971). Under this doctrine, employees have two periods in which to file a decertification petition. From 90 to 60 days before the end of the contract, called the open period, employees may file petitions to have a representation election. Also, after the termination of the contract, if no new contract is reached during the last 60 days of the contract, employees may petition for a representation election
 In this case, Wolchow's attempt to refile the petition that had been rejected earlier came after the open period and prior to the termination of the contract and it was thus deemed barred.